

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C. 20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Mitchell R. Berger
T   +1 202 457 5601
mitchell.berger@squirepb.com

May 6, 2019

**VIA ECF**

Hon. Eric N. Vitaliano
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Singer, et al. v. Bank of Palestine*, Case No. 1:19-cv-00006 (ENV) (RML)

Dear Judge Vitaliano:

    This law firm represents the Defendant, Bank of Palestine ("BOP"), in the above-referenced action. Pursuant to Rule III(A) of the Court's Individual Motion Practice and Rules and Magistrate Judge Levy's February 15, 2019 Order, we write to request a pre-motion conference in advance of BOP's motion to dismiss this action pursuant to Fed. R. Civ. P. 12. We anticipate BOP's motion will be based on the arguments outlined below, but reserve the right to assert additional arguments or defenses based on our ongoing investigation of Plaintiffs' claims.

**I.    Summary of the Allegations in Plaintiffs' Complaint**

    The 115 Plaintiffs in this action claim to be victims, or the family members or estates of victims, of 12 terrorist attacks in Israel between December 2001 and August 2003. (*See generally* Complaint, ECF Dkt. No. 1 ("Compl."), at 5-58.) Plaintiffs allege that these attacks were perpetrated by Hamas, which has been designated a Foreign Terrorist Organization ("FTO") by the U.S. government. (*Id.* ¶ 1.)

    BOP is the largest bank in the Palestinian territories, is headquartered in the West Bank city of Ramallah, and is publicly traded on the Palestinian stock exchange. (*See id.* ¶¶ 499-502, 505.) BOP does not have, and has never had, branches or operations in the United States.

    Plaintiffs assert a single, secondary-liability claim against BOP under the Antiterrorism Act of 1990, 18 U.S.C. § 2331 *et seq.* (the "ATA"), as amended in 2016 by the Justice Against Sponsors of Terrorism Act ("JASTA"). Specifically, Plaintiffs assert that BOP is liable under 18 U.S.C. § 2333(d) for aiding and abetting an FTO "by transferring significant sums of money to HAMAS and its operatives and maintaining bank accounts for its senior operatives and key institutions"; and further, that in doing so, BOP "foreseeably aided HAMAS in committing acts of terrorism of the kind that injured the plaintiffs." (Compl. ¶¶ 705, 707.)

47 Offices in 20 Countries

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP  
**VIA ECF**

Hon. Eric N. Vitaliano  
May 6, 2019

Plaintiffs allege that BOP aided and abetted Hamas by maintaining accounts and performing financial services for five entities that Plaintiffs assert are part of Hamas's "social service network": Islamic University of Gaza; Al Mujama Al Islami (Islamic Center—Gaza); Al Jam'iya Al Islamiya (Islamic Society—Gaza); Al Salah Islamic Society; and Al Wafa Charitable Society. (Compl. ¶¶ 692-693.)[1] Plaintiffs do not allege that BOP provided banking services directly to Hamas itself, or to any individual allegedly associated with Hamas. Instead, Plaintiffs allege that BOP provided banking services to these charities and educational institutions that, they posit, must in turn have transferred funds to Hamas. Plaintiffs' Complaint must be dismissed because it does not allege either the requisite "'causal relationship between [BOP's] U.S. contacts and the episode in suit'" (*i.e.*, the specific attacks in which Plaintiffs were injured) to permit the exercise of jurisdiction over BOP, *Waldman v. PLO*, 835 F.3d 317, 341 (2d Cir. 2016) (quoting *Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 247 (D.D.C. 2015)), or facts sufficient to state an aiding and abetting claim under JASTA. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018).

## II. Plaintiffs Have Not Plead Facts Sufficient to Establish Jurisdiction Over BOP

Plaintiffs do not allege, and could not establish, facts that would permit this Court's exercise of general jurisdiction over BOP because BOP is headquartered in Ramallah and has no physical presence in the United States, and thus is not "essentially at home" in the United States. *See Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014); *Waldman*, 835 F.3d at 331.

Nor have Plaintiffs alleged facts that would permit the exercise of specific jurisdiction here. For specific jurisdiction, Plaintiffs must demonstrate that "the defendant's ***suit-related conduct***—their role in the . . . terror attacks at issue—create[s] a ***substantial connection*** with the forum State pursuant to the ATA." *Waldman*, 835 F.3d at 335 (emphasis added). In an ATA case, "[t]he relevant 'suit-related conduct'" is "the conduct that ***could have subjected [defendant] to liability*** under the ATA." *Id.* To satisfy that test when the defendant is a bank, the financial services provided to a customer must evidence not only "repeated use of New York's banking system," but also that those financial services served "***as an instrument for accomplishing the alleged wrongs*** for which the plaintiffs seek redress." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 171 (2d Cir. 2013) (emphasis added). Accordingly, to assert a *prima facie* basis for specific jurisdiction, Plaintiffs must allege facts that, at a minimum, would establish that: (1) BOP processed sufficient transfers through its New York correspondent accounts to create a "substantial connection" with the forum; and, (2) those fund transfers gave rise to the attacks at issue—the primary wrong for which Plaintiffs seek to hold BOP secondarily liable. *Id.*

Plaintiffs have not met this test. They assert that BOP transferred funds "for the benefit" of Hamas through New York-based correspondent accounts at Citibank, JP Morgan Chase, and Union Bank of California. (Compl. ¶¶ 5-6.) But Plaintiffs have not shown the requisite causal connection between (i) the alleged financial transfers through New York for the benefit of charities and educational institutions, and (ii) the Hamas terrorist attacks at issue. They thus fail to show "conduct" by BOP, in or directed at the United States, "that ***could have subjected [it] to liability*** under the ATA," as *Waldman* and *Licci* require. Illustratively, Plaintiffs have not identified a single dollar transferred through BOP's correspondent accounts that was ultimately transferred to Hamas, which allegedly carried out the attacks that give rise to Plaintiffs' injuries; that was provided to any person who planned or committed any of the attacks; or that in any other way

---

[1] Plaintiffs also allege that BOP opened an account for the Holy Land Foundation in 1994 (*see* Compl. ¶¶ 575, 577), but they do not allege that any transfers were processed through this account, or even that the account remained active, during the 2001-2003 time period in which Plaintiffs allege they were injured.

Squire Patton Boggs (US) LLP
VIA ECF

Hon. Eric N. Vitaliano
May 6, 2019

"substantially assisted" the commission of any of the attacks. Nor do Plaintiffs allege anything about any of the transfers themselves that would indicate they were intended to facilitate terror attacks, nor any other facts by which BOP was purportedly aware that any transfers processed through its New York correspondent accounts were so intended. To the contrary, Plaintiffs admit that the entities they identify as BOP customers "perform actual social work and provide charitable services" (Compl. ¶ 616).[2]

### III. Plaintiffs Have Not Alleged BOP Substantially Assisted the 12 Attacks

To state a claim for aiding and abetting liability under the ATA, Plaintiffs must allege facts sufficient to show that BOP "knowingly provid[ed] substantial assistance" to "the person" who committed the attacks that gave rise to their injuries. 18 U.S.C. § 2333(d)(2). "[A]iding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*"; rather, the purported aider and abettor must "itself assum[e] a 'role' in terrorist activities" that injured the Plaintiffs. *Linde*, 882 F.3d at 329. "Congress, in enacting JASTA, instructed that the 'proper legal framework for how [aiding and abetting] liability should function' under the ATA is that identified in" *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). *Id.* (quoting 18 U.S.C. § 2333 Statutory Note) (brackets in original). In *Halberstam*, "the D.C. Circuit indicated that . . . the assistance given by the defendant should play a 'major part in prompting the tort' or be 'integral' to the tort in order to be considered substantial assistance." *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 918 (N.D. Cal. 2018) (quoting *Halberstam* and dismissing ATA claim where there were "insufficient allegations that Defendants played a role in any particular terrorist activities"). The Second Circuit has emphasized that "the mere provision of 'routine banking services to organizations and individuals said to be affiliated with' terrorists does not necessarily establish causation" as required under the ATA. *Linde*, 882 F.3d at 327 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 124 (2d Cir. 2013)).

Here, Plaintiffs have asserted no facts suggesting that the routine financial services provided by BOP played *any* part, let alone a "major part," in bringing about any of the attacks in which they were injured. The Complaint alleges no connection between any of the financial services BOP purportedly provided to these charities and educational institutions, and the attacks at issue.

### IV. Plaintiffs Have Not Alleged BOP was "Aware" it was "Assuming a Role" in Terrorism

Under JASTA, secondary liability also "requires the secondary actor"—here, BOP—"to be 'aware' that, by assisting the principal, it [was] itself assuming a 'role' in terrorist activities." *Linde*, 882 F.3d at 329. Further, the "principal" must be "the person who committed [the] act of international terrorism." *Id.* at 320.

Here, Plaintiffs allege that BOP provided banking services to charitable and educational organizations that BOP knew were affiliated with Hamas. But as *Linde* makes clear, this is insufficient. Plaintiffs have not plausibly alleged that those organizations committed the terrorist acts that injured Plaintiffs. Nor have Plaintiffs alleged facts sufficient to show that any financial services BOP provided actually played a substantial "role" in any terrorist acts, let alone that BOP was *aware* that it was *itself* playing such a role.

---

[2] Plaintiff Arie Miller also lacks standing to assert an ATA claim because he is not (a) a U.S. national or (b) a survivor or heir of a U.S. national killed by an act of international terrorism (Compl. ¶ 453). *See* 18 U.S.C. § 2333(a); *Miller v. Arab Bank, PLC,* 2019 U.S. Dist. LEXIS 38588, *11 (E.D.N.Y. Mar. 11, 2019).

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. Eric N. Vitaliano
May 6, 2019

Respectfully submitted,

Squire Patton Boggs (US) LLP

Mitchell R. Berger