**OSEN LLC**
ATTORNEYS AT LAW
WWW.OSENLAW.COM

---

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601          1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400   F. 201.265.0303                                                              T.212.354.0111

May 13, 2019

**VIA FEDEX AND ECF**

Honorable Eric N. Vitaliano
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Singer, et al. v. Bank of Palestine,* **Case No. 1:19-cv-00006 (ENV) (RML)**

Dear Judge Vitaliano:

      Plaintiffs respectfully write in response to Defendant's May 6, 2019 letter to address the arguments upon which Defendant Bank of Palestine ("BOP") anticipates predicating its motion to dismiss.

**Personal Jurisdiction**

      Defendant asserts that the facts set forth in the Complaint would not permit the exercise of specific jurisdiction in this case. To begin with, BOP ignores Congress's express findings in enacting the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d), which is the provision under which this Action has been brought. Congress expressly found that:

> Persons, entities, or countries that knowingly or recklessly contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States or the national security, foreign policy, or economy of the United States, necessarily direct their conduct at the United States, and **should reasonably anticipate being brought to court in the United States to answer for such activities.**

JASTA, § 2(a)(6) (emphasis added).

      Congress went further, stating:

> The purpose of this Act is to provide civil litigants with **the broadest possible basis, consistent with the Constitution of the United States**, to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States.

JASTA, § 2(b) (emphasis added).

Moreover, BOP misapplies the holding of the controlling Second Circuit precedent – a series of cases captioned *Licci v. American Express Bank Ltd.* – concerning specific jurisdiction under the CPLR and the Constitution over foreign banks that transmit funds to Foreign Terrorist Organizations ("FTOs"). According to BOP, "Plaintiffs must allege facts that, at a minimum, would establish that: (1) BOP processed sufficient transfers through its New York correspondent accounts to create a 'substantial connection' with the forum; and, (2) those fund transfers gave rise to the attacks at issue-the primary wrong for which Plaintiffs seek to hold BOP secondarily liable." Letter at 2. Like the defendant in *Licci,* BOP wants to pretend that HAMAS-controlled entities are distinct from HAMAS itself *as a matter of law* and that Plaintiffs are required to trace specific transactions to the terrorist attacks rather than the terrorist *organization* that committed the attacks.

*Licci*'s relevant allegations were summarized by the district court in 2010:

> Plaintiffs allege that several bank accounts in the name of the Shahid (Martyrs) Foundation . . . were maintained at LCB branches in Lebanon. Plaintiffs further allege that, between 2004 and July 12, 2006, defendants effectuated dozens of dollar wire transfers to, from and/or between those accounts, totaling several million dollars. Plaintiffs claim that the wire transfer banking services provided by defendants were carried out in and through New York via Amex Bank, acting as LCB's correspondent bank.

*Licci v. American Exp. Bank Ltd.*, 704 F. Supp. 2d 403, 405 (S.D.N.Y. 2010). Like BOP, Lebanese Canadian Bank ("LCB") was accused of maintaining accounts overseas for a purported charity (the "Shahid Foundation") that raised and collected funds for an FTO. Whereas BOP has allegedly maintained various accounts for HAMAS-controlled entities in the Gaza Strip, LCB allegedly maintained the Shahid Foundation's accounts at LCB branches in Lebanon. In sum, the Second Circuit *actually* held "[a]s we have explained, LCB's repeated use of the correspondent account—and hence New York's banking system—as an instrument to achieve the wrong complained of in this suit *satisfies the minimum contacts component of the due process inquiry*." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 173 (2d Cir. 2103) ("*Licci III*") (emphasis added).[1] Notwithstanding Defendant's argument to the contrary, both JASTA and *Licci* make clear that this Court may exercise jurisdiction over BOP.

**Aiding & Abetting Liability Under 18 U.S.C. §2333(d)**

The Complaint alleges sufficient facts to satisfy 18 U.S.C. §2333(d) as enacted by Congress through JASTA, which expressly found that *Halberstam v. Welch,* 705 F.2d 472 (D.C. Cir. 1983) "provides the proper legal framework for how such liability should function in the

---

[1] *See also Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340 (N.Y. 2012) ("*Licci II*") (following certification from Second Circuit, holding under CPLR §302(a)(1) that repeated use of the correspondent account shows not only transaction of business, but an articulable nexus or substantial relationship between the transaction and the alleged breaches of statutory duties, where defendant did not merely route transfers "once or twice by mistake."

context of Chapter 113B of title 18, United States Code." 18 U.S.C. §2333 (note), §2(a)(5). The Court of Appeals followed this directive in *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018).

> *Linde* then restated and applied *Halberstam*'s elements (as Congress required):
>
> (1) the party whom the defendant aids must perform a wrongful act that causes an injury;
> (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and
> (3) the defendant must knowingly and substantially assist the principal violation.

*Id.* (quoting *Halberstam*, 705 F.2d at 487). Plaintiffs' allegations satisfy all three elements.

1. **Wrongful Act**

The Complaint identifies the terrorist attacks HAMAS committed, planned and authorized that killed and injured Plaintiffs. *See* Complaint ¶¶ 8, 41, 172, 235, 294, 313, 332, 385, 402, 408, 481, 486.

2. **General Awareness**

BOP disregards the straightforward legal standard established in *Halberstam*, arguing that "provid[ing] banking services to charitable and educational organizations that BOP knew were affiliated with Hamas" is insufficient because "Plaintiffs have not plausibly alleged that those organizations committed the terrorist acts that injured Plaintiffs." Letter at 3.

The *Halberstam* plaintiffs alleged that defendant Linda Hamilton was liable for the murder of Michael Halberstam committed by her boyfriend during a botched burglary of Halberstam's house. Hamilton's boyfriend was a serial burglar, and Hamilton acted as his "banker, bookkeeper, recordkeeper, and secretary," helping him "launder the loot and divert attention from [him]." *Id.* at 487. Although her actions were "neutral standing alone" and she denied knowing the criminal nature of her boyfriend's "evening forays," the court found that "it defies credulity that Hamilton did not know that something illegal was afoot." *Id.* at 486. No evidence suggested that she had any knowledge of the murder—she did not even necessarily know about the burglaries. *Id*. at 488 ("It was not necessary that Hamilton knew specifically that Welch was committing burglaries.")

The Complaint, however, sets forth specific allegations detailing BOP's knowledge that its customers were HAMAS-controlled organizations and plausibly alleges that HAMAS committed the attacks. Complaint ¶¶ 8, 41, 172, 235, 294, 313, 332, 385, 402, 408, 481, 486, 589-596, 692-702. That exceeds the level of awareness required under JASTA's *Halberstam* framework.

3. **Substantial Assistance**

The parties agree on the factors a court must consider in determining whether a defendant has provided "substantial assistance" to a primary tortfeasor and agree that *Linde* holds that "the

**Letter to Hon. Eric N. Vitaliano, U.S.D.J.**
**May 13, 2019**
**Page 4 of 4**

mere provision of 'routine banking services to organizations and individuals said to be affiliated with' terrorists does not necessarily *establish* causation" (emphasis added). But *Linde* was assessing the sufficiency of a jury charge after trial where the issue was whether the jury's finding of a criminal violation of 18 U.S.C. §2339B *compels* a finding of substantial assistance under *Halberstam*. Here, no facts have need be *established*, but the Complaint plausibly alleges that BOP provided substantial assistance to HAMAS. *See, e.g.,* Complaint ¶¶ 1, 2, 627-28, 643-44, 662-63, 680-82, 691, 692-93, 698-702, 705, 707.

We will be prepared to address the relevant issues at the pre-motion conference.

Respectfully submitted,

/s/ Gary M. Osen

cc:     All Counsel