UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SARRI ANNE SINGER, et al.,

                              Plaintiffs,

-against-

                                              19-cv-006 (ENV) (RML)

BANK OF PALESTINE,

                              Defendant.

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF BANK OF PALESTINE

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, NW
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Joseph S. Alonzo
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Counsel for Defendant Bank of Palestine*

March 10, 2020

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.     THIS ACTION MUST BE DISMISSED FOR LACK OF PERSONAL
JURISDICTION. .......................................................................................................... 3

     A.     Plaintiffs Have Not Plausibly Alleged Facts Sufficient for Specific
Personal Jurisdiction Over BOP. .......................................................... 3

     B.     Plaintiffs are Not Entitled to Jurisdictional Discovery. ........................ 7

II.     PLAINTIFFS' AIDING-AND-ABETTING CLAIM MUST BE DISMISSED. ............. 9

     A.     The Second Circuit and Multiple District Court Decisions Have
Confirmed that Plaintiffs Must Plausibly Allege that BOP was "Aware"
that it was Playing a "Role" in Hamas's "Violent or Life-Endangering
Activities." ........................................................................................... 10

     B.     Plaintiffs Cannot Meet the "Awareness" Requirement, and Misstate Case
Law in an Effort to Avoid the Requirement. ....................................... 13

     C.     Plaintiffs Do Not Plausibly Allege BOP was Aware of any Connection
Between its Alleged Customers and Hamas. ....................................... 18

     D.     Plaintiffs Have Not Plausibly Alleged that BOP Provided Knowing and
Substantial Assistance to the "Person[s] Who Committed" the Attacks. ........... 20

III.     PLAINTIFFS MATANYA NATHANSEN, JULIE AVERBACH, AND
NEVENKA GRITZ MUST BE DISMISSED FOR LACK OF STANDING................. 24

IV.     THE STEINHERZ PLAINTIFFS MUST BE DISMISSED FOR LACK OF
STANDING. .............................................................................................................. 25

CONCLUSION ............................................................................................................................ 26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Averbach v. Cairo Amman Bank*,
  No. 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902 (S.D.N.Y. Jan.
  21, 2020) (Parker, M.J.) ............................................................................. *passim*

*Averbach v. Cairo Amman Bank*,
  No. 19-cv-0004-GHW, 2020 U.S. Dist. LEXIS 40430 (S.D.N.Y. Mar. 9,
  2020) ........................................................................................................... *passim*

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) .................................................................................. 6

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998) .................................................................................. 6

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ................................................................................ 6

*Fire & Police Pension Ass'n v. Bank of Montreal*,
  368 F. Supp. 3d 681 (S.D.N.Y. 2019) ................................................................. 5

*Haber v. United States*,
  823 F.3d 746 (2d Cir. 2016) ................................................................................ 8

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ...................................................................... *passim*

*HDtracks.com, LLC v. 7digital Ltd.*,
  No. 18 Civ. 5823 (JFK), 2020 U.S. Dist. LEXIS 21027 (S.D.N.Y. Feb. 6,
  2020) ...................................................................................................................... 7

*Estate of Hirshfeld v. Bank of China, Ltd.*,
  No. 18-cv-1982 (S.D.N.Y. Aug. 9, 2019) .................................................... 14, 15

*Honickman v. BLOM Bank SAL*,
  No. 19-cv-00008(KAM)(SMG), 2020 U.S. Dist. LEXIS 7222 (E.D.N.Y. Jan.
  14, 2020) ............................................................................................................ *passim*

*Jash Raj Films (USA) Inc. v. Dishant.com LLC*,
  No. 08-CV-2715 (ENV) (RML), 2009 U.S. Dist. LEXIS 116431 (Dec. 15,
  2009) ...................................................................................................................... 8

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998)....................................................................................8

*Kaplan v. Lebanese Canadian Bank, SAL*,
   405 F. Supp. 3d 525 (S.D.N.Y. 2019)........................................................... *passim*

*Lelchook v. Islamic Republic of Iran*,
   393 F. Supp. 3d 261 (E.D.N.Y. 2019) .......................................................14, 15, 16

*Licci v. Lebanese Canadian Bank*,
   732 F.3d 161 (2d Cir. 2013)...........................................................................2, 3, 5, 6

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018)........................................................................... *passim*

*Miller v. Arab Bank, PLC*,
   372 F. Supp. 3d 33 (E.D.N.Y. 2019) ...................................................................14, 16

*Molchatsky v. United States*,
   778 F. Supp. 2d 421 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013) ..............................9

*O'Sullivan v. Deutsche Bank AG*,
   No. 17 CV 8709-LTS-GWG, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar.
   28, 2019) ...............................................................................................1, 11, 16

*O'Sullivan v. Deutsche Bank AG*,
   No. 17 CV 8709-LTS-GWG, 2020 U.S. Dist. LEXIS 32024 (S.D.N.Y. Feb.
   25, 2020) ...............................................................................................1, 12

*Siegel v. HSBC North Am. Holdings, Inc.*,
   933 F.3d 217 (2d Cir. 2019)........................................................................... *passim*

*SPV OSUS, Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)...........................................................................2, 3, 5, 6

*SPV Osus, Ltd. v. UniCredit Bank Aus.*,
   No. 18-cv-3497 (AJN), 2019 U.S. Dist. LEXIS 55713 (S.D.N.Y. Mar. 30,
   2019) ................................................................................................................7

*Storms v. VFW of the U.S., Inc.*,
   No. 15 Civ. 1038 (ENV) (ST), 2016 U.S. Dist. LEXIS 151240 (E.D.N.Y.
   Nov. 1, 2016) .................................................................................................3, 7

*Strauss v. Crédit Lyonnais, S.A.*,
   379 F. Supp. 3d 148 (E.D.N.Y. 2019), *appeal filed,* No. 19-1285 (2d Cir. Apr.
   26, 2019) ..............................................................................................1, 11, 16

iii

*Stutts v. De Dietrich Grp.*,
    465 F. Supp. 2d 156 (E.D.N.Y. 2006) .................................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
    295 F. Supp. 3d 416 (S.D.N.Y. 2018).................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
    538 F.3d 71 (2d Cir. 2008)..................................................................................8

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)....................................................................................4, 5

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016).........................................................................4, 5, 6

*Weiss v. Nat'l Westminster Bank PLC*,
    278 F. Supp. 3d 636 (E.D.N.Y. 2017) ...............................................................21

*Weiss v. Nat'l Westminster Bank PLC*,
    381 F. Supp. 3d 223 (E.D.N.Y. 2019), *appeal filed sub nom.*, *Appelbaum v.
    Nat'l Westminster Bank, PLC*, No. 19-1159 (2d Cir. Apr. 16, 2019).....................1, 11, 16, 17

**Statutes**

18 U.S.C. § 2333(a) ..................................................................................................25

18 U.S.C. § 2333(d) ..................................................................................................20

18 U.S.C. § 2339B ...............................................................................................10, 17

Anti-Terrorism Act (ATA) .................................................................................... *passim*

Justice Against Sponsors of Terrorism Act (JASTA) ............................................. *passim*

**Rules**

Fed. R. Civ. P. 12 ...............................................................................................1, 5, 7

**Other Authorities**

Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Courts &
    Admin. Practice of the S. Comm. on the Judiciary, at 46, 101st Cong. 84
    (1990) (statement of Sen. Strom Thurmond)........................................................24

## PRELIMINARY STATEMENT

This action must be dismissed because Plaintiffs have not plausibly alleged facts that would provide for jurisdiction over Bank of Palestine ("BOP"), or that state a claim for aiding-and-abetting liability under the Anti-Terrorism Act ("ATA"), as modified by the Justice Against Sponsors of Terrorism Act ("JASTA"), arising from any of the 12 separate terrorist attacks (the "Attacks") which they claim give rise to their injuries.  The fundamental deficiency of the Amended Complaint, both jurisdictionally and substantively, is that Plaintiffs do not connect either (i) BOP's U.S. banking transactions or (ii) its overseas banking services, to the Attacks, to terrorist activity generally, or even to terrorist organizations.

Instead, Plaintiffs' case—just like other look-alike ATA lawsuits against banks that recently have been dismissed[1]—depends on the discredited theory that ATA aiding-and-abetting liability can be based on banking services to lawful customers that allegedly, in turn, aid terrorist organizations.  The Second Circuit squarely rejected this liability theory in both *Linde* and *Siegel*, holding that JASTA liability for "aiding and abetting an <u>act</u> of international terrorism requires more than the provision of material support to a designated terrorist <u>organization</u>."  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (emphasis in original); *Siegel v. HSBC North Am. Holdings, Inc.*, 933 F.3d 217, 224 (2d Cir. 2019) (same).

There is a clear demarcation between the *scienter* required for an ATA primary-liability theory, which focuses simply on whether a bank has provided "material support" to a known U.S.-

---

[1] These include *O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709-LTS-GWG, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28, 2019); *Strauss v. Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019) (denying as futile request to add JASTA aiding-and-abetting claim), *appeal filed,* No. 19-1285 (2d Cir. Apr. 26, 2019); *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019) (same), *appeal filed sub nom.*, *Appelbaum v. Nat'l Westminster Bank, PLC*, No. 19-1159 (2d Cir. Apr. 16, 2019); *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019); *Honickman v. BLOM Bank SAL*, 19-cv-00008(KAM)(SMG), 2020 U.S. Dist. LEXIS 7222 (E.D.N.Y. Jan. 14, 2020); and *Averbach v. Cairo Amman Bank*, 19-cv-0004-GHW, 2020 U.S. Dist. LEXIS 40430 (S.D.N.Y. Mar. 9, 2020).  *See also O'Sullivan*, 2020 U.S. Dist. LEXIS 32024 (S.D.N.Y. Feb. 25, 2020) (denying leave to file amended complaint to add JASTA aiding-and-abetting claim).

designated <u>Foreign Terrorist Organization</u> ("FTO), and the *scienter* required for an aiding-and-abetting theory of ATA secondary-liability, for which a plaintiff must plausibly allege that, in providing banking services, a bank "was 'generally aware' that it was thereby playing a 'role' in Hamas's [or another terrorist group's] violent or life-endangering <u>activities</u>." *Linde*, 882 F.3d at 329 (emphasis added). Plaintiffs improperly are attempting to substitute the lower ATA primary-liability *scienter* standard for the higher JASTA <u>secondary-liability</u> *scienter* standard.

The Amended Complaint does not satisfy the heigted *mens rea* standard for aiding-and-abetting because Plaintiffs have not plausibly alleged that BOP was "aware" that, in providing routine banking services to five educational and charitable institutions—none of which was designated as a terrorist by the U.S. government during the relevant period—BOP was playing a "role" in Hamas's violent or life-threatening <u>activities</u>.

Nor have Plaintiffs plausibly alleged that, by providing routine banking services to those educational and charitable institutions—all of which Plaintiffs admit "perform actual social work and provide charitable services," Am. Compl. ¶ 618, and none of which Plaintiffs allege was involved in preparing for or committing the Attacks—BOP provided "knowing" and "substantial assistance" to the "person[s] who committed" the Attacks. Further, as to two U.S.-designated entities that allegedly were BOP customers—the Holy Land Foundation ("HLF") and Interpal—Plaintiffs have not plausibly alleged that BOP provided <u>any</u> banking services at all during the relevant period.

Likewise jurisdictionally, the Second Circuit requires a <u>substantial causal-connection</u> between a defendant's U.S. banking transactions and terrorist <u>acts</u> that injured a plaintiff. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013); *see SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). Plaintiffs allege no such causal-connection, and indeed disclaim the need

to allege one.  Instead, they rely on the facially deficient theory that jurisdiction may be exercised over a foreign bank so long as the lawful customers for which the bank executed wire transfers through the United States, in turn, allegedly aided terrorist <u>organizations</u> but not specified terrorist <u>acts</u>.  That jurisdictional theory cannot be squared with *Licci*, *SPV OSUS*, and other Second Circuit precedent.  Further, because Plaintiffs do not allege a *prima facie* case for jurisdiction over BOP, they are not entitled to jurisdictional discovery to fish for a jurisdictional basis.  *Storms v. VFW of the U.S., Inc.*, No. 15 Civ. 1038 (ENV) (ST), 2016 U.S. Dist. LEXIS 151240, *12 n.9 (E.D.N.Y. Nov. 1, 2016) (Vitaliano, D.J.) ("'[d]eclining to permit jurisdictional discovery is well within a district court's discretion' where, as here, the plaintiff fails to make a *prima facie* showing of personal jurisdiction.") (quoting *In re Angeln GmBH & Co. KG*, 510 Fed. Appx. 90, 93 (2d Cir. 2013)).

Separately, a number of Plaintiffs must be dismissed for lack of standing, either because they are not U.S. nationals and therefore do not have standing under the ATA to assert claims for their own injuries, or because their alleged injuries are not fairly traceable to an Attack or BOP's alleged conduct.  *See* BOP's Moving Brief, ECF No. 37-1, at 32-35.

Plaintiffs have failed to establish a *prima facie* case of jurisdiction over BOP and have failed to state a claim for JASTA aiding-and-abetting liability against BOP.  Their Amended Complaint must now be dismissed.

## ARGUMENT

## I.   THIS ACTION MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

### A.   Plaintiffs Have Not Plausibly Alleged Facts Sufficient for Specific Personal Jurisdiction Over BOP.

BOP, a Palestinian bank with no U.S. presence, is not subject to specific jurisdiction because its alleged "suit-related conduct" does not "create a substantial connection with the

forum", here the United States.[2]  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  In the ATA context, a defendant's "suit-related conduct" is the "conduct that could have subjected" the defendant "to liability under the ATA."  *Waldman v. PLO*, 835 F.3d 317, 335 (2d Cir. 2016). Plaintiffs have not plausibly alleged that BOP's "suit-related conduct—[its alleged] role in the . . . terror attacks at issue—creates a substantial connection with the forum State pursuant to the ATA." *Id.*

It is not enough for jurisdiction that BOP maintained correspondent accounts with U.S. banks during the relevant period, or that, at some other time, BOP allegedly processed funds transfers through those accounts for two organizations, HLF and Interpal, which Plaintiffs allege are "fundraisers" for Hamas, and one charity, al-Salah.  Opposition ("Opp.") at 18.  Plaintiffs have not alleged—even in conclusory fashion—that BOP processed a single transaction for these entities through the United States during the relevant time period.

As importantly, Plaintiffs admit that they do not allege any transfers, at any time, through the United States related to the remaining charitable and educational entities they allege received banking services from BOP.  Plaintiffs also admit that they "do not know," and therefore do not allege, that any transactions BOP allegedly processed for any other customers are jurisdictionally relevant.  Opp. at 19.[3]

Even more generally, despite the opportunity to amend their complaint, Plaintiffs still have not identified a single relevant transaction that BOP processed for any entity, or the date,

---

[2] Plaintiffs do not dispute, and thus concede, that BOP is not subject to general jurisdiction.

[3] Plaintiffs argue they have met their jurisdictional burden by alleging that "[d]uring the relevant period," BOP "purposefully and knowingly used its correspondent bank accounts in New York to facilitate a large volume of U.S. dollar-denominated funds transfers to HAMAS."  Opp. at 18.  But this fact-free, conclusory assertion simply recites what Plaintiffs wish they could plausibly allege, but have not.  There is no allegation that BOP maintained an account or provided financial services of any kind for Hamas, nor is there any allegation that a single dollar processed through BOP was ultimately sent to Hamas.  This Court cannot credit Plaintiffs' conclusory, fact-free allegation even on a Rule 12 motion.

counterparty, or dollar amount of any such transaction.  Nor have Plaintiffs alleged that any funds processed by BOP through a New York-based correspondent account were ultimately provided to the individual perpetrators of the Attacks, or even to Hamas, that were causally-connected to an Attack.

Plaintiffs' allegations thus do not satisfy the "suit-related conduct" standard from *Walden* and *Waldman*, and, taken together, fail to constitute "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d at 342 (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).  Accordingly, Plaintiffs have not met their burden on a Rule 12 motion of making "a prima facie showing that personal jurisdiction over the defendant exists." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) (citation omitted).

Plaintiffs do not even attempt to meet the *Waldman* standard or satisfy the "suit-related conduct" standard.  Instead, they argue that the *Waldman* standard is limited to cases involving the "effects test" theory of personal jurisdiction, as contrasted with the "purposeful availment" theory. Opp. at 22.  But courts in this circuit have explicitly required plaintiffs to meet the "suit-related conduct" standard in cases involving the same "purposeful availment" theory on which Plaintiffs rely here.  *See, e.g., Fire & Police Pension Ass'n v. Bank of Montreal*, 368 F. Supp. 3d 681, 696, 700 (S.D.N.Y. 2019) (dismissing claims for lack of jurisdiction where plaintiffs had not plausibly alleged "suit-related contacts" sufficient to "establish the basis for personal jurisdiction under the purposeful availment theory.")

Plaintiffs also fail to plausibly allege any causal connection between funds transfers processed by BOP through its New York correspondent bank accounts and the Attacks.  Plaintiffs refer to *Licci* but ignore that there, and unlike here, the transfers that the defendant-bank processed

through New York served "as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress". 732 F.3d at 171. Accordingly, *Licci* was based on a causal connection between the in-forum transfers and the alleged wrongs at issue—*i.e.*, that the transfers at issue there were an <u>instrument</u> for <u>accomplishing</u> the alleged wrongs (in *Licci,* rocket attacks). Plaintiffs cannot meet the *Licci* standard here because they have not identified a single transfer through BOP's correspondent accounts in New York that allegedly served as an "instrument for accomplishing" the Attacks in which Plaintiffs were injured.

Plaintiffs also seek to minimize the Second Circuit's holding in *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998), that to allege specific jurisdiction, a plaintiff must demonstrate either a proximate or but-for causal connection between the defendant's in-forum conduct and the plaintiff's injuries. Plaintiffs attempt to distinguish *Chew* on its facts, Opp. at 25. But *Chew* is hardly an outlier.

Rather, in cases more recent than either *Chew* or *Licci*, the Second Circuit has reaffirmed its recognition in *Waldman* that, for specific personal jurisdiction, "'[c]ourts typically require that the plaintiff show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit,' and the plaintiff's claim must in some way 'arise from the defendants' purposeful contacts with the forum.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (quoting *Waldman*, 835 F.3d at 341, 343). The degree of causation required for finding jurisdiction "depends on 'the relationship among the defendant, the forum, and the litigation," *SPV OSUS*, 882 F.3d at 344. "[W]here the defendant has had only limited contacts with the state[,] it may be appropriate" to require that "plaintiff's injury was proximately caused by those contacts." *Id.* (quoting *Chew*, 143 F.3d at 29)); *see In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019) ("we have always required some *causal* relationship between an entity's in-forum contacts and the

proceeding at issue."); *HDtracks.com, LLC v. 7digital Ltd.,* No. 18 Civ. 5823 (JFK), 2020 U.S. Dist. LEXIS 21027, at *14 (S.D.N.Y. Feb. 6, 2020) ("Depending on the extent of a defendant's contacts with the forum, courts require 'that the in-forum conduct . . . be the proximate cause of plaintiff's injuries . . . [or] the 'but for' cause of those injuries.") (quoting *SPV Osus*, 882 F.3d at 344); *SPV Osus, Ltd. v. UniCredit Bank Aus.*, No. 18-cv-3497 (AJN), 2019 U.S. Dist. LEXIS 55713, *17-18 (S.D.N.Y. Mar. 30, 2019) ("Courts require" that the in-forum contact satisfy "either proximate or but-for causation depending on the extent of a defendant's contacts with the forum.").

Plaintiffs cannot show either a proximate or but-for causal connection here between BOP's U.S. correspondent-bank activity and the Attacks; indeed, they have not even attempted to do so. They have not alleged a single transaction processed through BOP's New York correspondent accounts during the relevant period, let alone plausibly alleged that any transactions processed by BOP are causally linked to the Attacks or to any Hamas violent or life-endangering activity. Plaintiffs' failure to identify <u>any</u> transfers through the United States during the relevant period means they cannot possibly meet the requirement that such transfers were the proximate or but-for cause of the Attacks.

Plaintiffs have failed to allege a *prima facie* case for jurisdiction over BOP. The Amended Complaint must now be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## B.    Plaintiffs are Not Entitled to Jurisdictional Discovery.

Implicitly acknowledging that they have not met the requirements for specific jurisdiction over BOP, Plaintiffs seek jurisdictional discovery on the theory that they have made a "sufficient start" toward establishing jurisdiction. Opp. at 19. This conceded shortfall alone forecloses jurisdictional discovery. As this Court has held in other cases, "'[d]eclining to permit jurisdictional discovery is well within a district court's discretion' where, as here, the plaintiff fails to make a *prima facie* showing of personal jurisdiction." *Storms*, 2016 U.S. Dist. LEXIS 151240, *12 n.9

(quoting *In re Angeln GmBH & Co. KG*, 510 Fed. Appx. 90, 93 (2d Cir. 2013)); *Jash Raj Films (USA) Inc. v. Dishant.com LLC*, No. 08-CV-2715 (ENV) (RML), 2009 U.S. Dist. LEXIS 116431, *33-34 (Dec. 15, 2009) (Vitaliano, D.J.) (holding that "whatever speculations or hopes plaintiff may have that further connections to New York will come to light in discovery, plaintiff has not provided sufficient facts to establish the jurisdiction that is a prerequisite to any such discovery.") (internal quotation and citation omitted); *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 96 (2d Cir. 2008) (affirming lower court denial of jurisdictional discovery where plaintiffs "did not establish a *prima facie* case that the district court had jurisdiction over" defendants) (internal quotation and citation omitted); *see Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction.") (collecting cases); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (affirming denial of jurisdictional discovery and holding that even where "without discovery it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York[,] [t]hat, however, is the consequence of the problems inherent in attempting to sue a foreign corporation . . . .").

For the reasons set forth above, Plaintiffs have failed to plausibly allege a *prima facie* case for personal jurisdiction over BOP.  The Court should not award Plaintiffs jurisdictional discovery where they have not made such a showing.  Moreover, jurisdictional discovery would be fruitless, as Plaintiffs have not plausibly alleged any causal connection between any banking services BOP provided to its customers <u>anywhere in the world</u> and Hamas's violent <u>activities</u>, nor have Plaintiffs made any showing of "how the information [they] hope[] to obtain from this discovery would bear on the critical issue for jurisdiction."  *Haber v. United States*, 823 F.3d 746, 753 (2d Cir. 2016)

(internal quotations and citation omitted); *see Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013) ("A party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity.").  Plaintiffs' Amended Complaint should be dismissed for lack of personal jurisdiction.

## II.    PLAINTIFFS' AIDING-AND-ABETTING CLAIM MUST BE DISMISSED.

Plaintiffs' secondary-liability theory pivots entirely on the legally-deficient premise that (1) BOP provided financial services to its customers while knowing that those customers were, in some way, affiliated with Hamas; and (2) Hamas committed the Attacks.  For multiple reasons, this argument fails to demonstrate, as JASTA requires, that BOP provided "knowing" and "substantial assistance" to the "person who committed" the Attacks.  First, Plaintiffs have not plausibly alleged that BOP provided any assistance whatsoever to anyone who perpetrated the Attacks, or that any funds processed through BOP were provided to Hamas and used to plan or carry out an Attack.  Second, Plaintiffs have not plausibly alleged that any BOP customer played any role in planning or committing the Attacks, or that any funds processed through any BOP customer's account were ultimately provided to Hamas or to any perpetrator of the Attacks and then used to commit an Attack.

Likewise, and for the same reasons, Plaintiffs do not plausibly allege that BOP was "generally aware" that BOP itself was playing a "role" in Hamas's violent or life-endangering activities.  In fact, Plaintiffs have not even plausibly alleged that BOP was aware of any purported connection between any of its customers and Hamas.

A.     **The Second Circuit and Multiple District Court Decisions Have Confirmed that Plaintiffs Must Plausibly Allege that BOP was "Aware" that it was Playing a "Role" in Hamas's "Violent or Life-Endangering Activities."**

Plaintiffs' sole cause of action, for allegedly aiding and abetting the Attacks, must be dismissed because Plaintiffs have failed to plausibly allege that—as required for their JASTA aiding-and-abetting claim—BOP was "aware" that by allegedly providing banking services, it was assuming a "role" in any of Hamas's "violent or life-endangering activities," let alone the Attacks in which Plaintiffs were injured.

The Second Circuit held in *Linde* that a JASTA aiding-and-abetting claim requires Plaintiffs to show that by providing financial services, a defendant bank "was 'generally aware'" that it was "playing a 'role' in Hamas's violent or life-endangering activities." 882 F.3d at 329 (emphasis added). The court also explicitly ruled that this requirement "is <u>different</u> from the *mens rea* required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." *Id.* at 329-330 (emphasis added).

The Second Circuit reaffirmed this holding less than a year ago in *Siegel*:  "In *Linde*, we explained that" the "general-awareness" element of a JASTA aiding-and-abetting claim "does require that 'the bank was generally aware that[, by providing financial services to a client,] it was thereby playing a 'role' in [the] violent or life-endangering activities." 933 F.3d at 224 (quoting *Linde*, 882 F.3d at 329-30) (alterations included in *Siegel*).  In *Siegel*, the Second Circuit found the plaintiffs' allegations "insufficient" to state a JASTA aiding-and-abetting claim where there was no plausible allegation that the defendant bank was aware that it was "assuming a role in [Al Qaida in Iraq's] violent activities." 933 F.3d at 224.

The *Linde/Siegel* rule has been applied in multiple recent in-Circuit decisions to dismiss JASTA aiding-and-abetting claims against financial institutions.   Those decisions provide the rationale for dismissal of Plaintiffs' look-alike aiding-and-abetting claim here:

- In *O'Sullivan v. Deutsche Bank AG*, No. 17 CV 8709-LTS-GWG, 2019 U.S. Dist. LEXIS 53134, at *39 (S.D.N.Y. Mar. 28, 2019), the court acknowledged the requirement that for a JASTA aiding-and-abetting claim, "the Complaint must allege plausibly that, in providing financial services, Defendants were 'generally aware' that they were thereby playing a 'role' in an FTO's violent or life-endangering activities." (quoting *Linde*, 882 F.3d at 329).  The court dismissed the JASTA aiding-and-abetting claims because it found that plaintiffs' allegations were "insufficient to allege plausibly that Defendants were 'generally aware' that they had taken a 'role' in the attacks that killed or injured Plaintiffs."  *Id.*

- In *Strauss v. Crédit Lyonnais, S.A.*, 379 F. Supp. 3d 148, 164 (E.D.N.Y. 2019), *appeal filed,* No. 19-1285 (2d Cir. Apr. 26, 2019), the court denied as futile plaintiffs' request to add a JASTA aiding-and-abetting claim, where "Plaintiffs present[ed] no evidence that create[d] a triable jury question as to whether Defendant generally was aware that it played a role in any of Hamas' . . . violent or life-endangering activities."

- In *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 239 (E.D.N.Y. 2019), *appeal filed sub nom.*, *Appelbaum v. Nat'l Westminster Bank, PLC*, No. 19-1159 (2d Cir. Apr. 16, 2019), the court denied plaintiffs' request to add a JASTA aiding-and-abetting claim on the same grounds as in *Strauss*.

11

- In *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 535 (S.D.N.Y. 2019), the court dismissed plaintiffs' JASTA aiding and abetting claim because the plaintiffs "d[id] not offer any non-conclusory allegations that Defendant was aware that, by providing financial services to [its customers], it was playing a role in violent or life-threatening acts".

- In *Honickman v. BLOM Bank SAL*, 19-cv-00008(KAM)(SMG), 2020 U.S. Dist. LEXIS 7222, *22 (E.D.N.Y. Jan. 14, 2020), Judge Kiya Matsumoto dismissed a JASTA aiding-and-abetting claim where "Plaintiffs allege[d] no facts establishing a jury question as to whether Defendant generally was aware that it played a role in any of Hamas's . . . violent or life-endangering activities."

- In *O'Sullivan*, Judge Swain of the Southern District issued a Memorandum Opinion and Order denying the plaintiffs' motion for leave to file an amended complaint. 2020 U.S. Dist. LEXIS 32024 (S.D.N.Y. Feb. 25, 2020).  Judge Swain found that plaintiffs' allegations that "Defendants were generally aware that they were 'assuming a role in the financing of terrorism'" were insufficient, and that the plaintiffs instead were required to "allege plausibly a general awareness that Defendants had assumed a role in a foreign terrorist organization's <u>act</u> of international terrorism." *Id.*, *17 (emphasis in original).

- In *Averbach v. Cairo Amman Bank*, 19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902, *44 (S.D.N.Y. Jan. 21, 2020) (Parker, M.J.), the magistrate judge recommended dismissal of plaintiffs' JASTA aiding-and-abetting claim, quoting *Linde* for the rule that "JASTA requires Plaintiffs to show that, 'in providing [financial] services, [Defendant] was "generally aware" that it was thereby playing

a "role" in [the terrorist organization's] violent or life-endangering activities,' which 'requires more than the provision of material support to a designated terrorist organization.'"

- District Judge Gregory Woods adopted Magistrate Judge Parker's report and recommendation "in its entirety," holding that the magistrate "correctly determined that the complaint failed to allege the 'general awareness' necessary to prove" the *scienter* element of a JASTA aiding-and-abetting claim, and that she correctly relied on the *Kaplan* framework to reach that conclusion. *Averbach*, 2020 U.S. Dist. LEXIS 40430, *10-12. Judge Woods also confirmed that Magistrate Judge Parker had correctly applied the six *Halberstam* factors and Second Circuit precedent to conclude that the *Averbach* plaintiffs had not plausibly alleged the separate substantial assistance element of a JASTA aiding-and-abetting claim. *Id.* at *10.

As these decisions make clear, even if Plaintiffs had plausibly alleged that BOP <u>knowingly</u> provided financial services to <u>Hamas</u>—which they have not done—that would be insufficient to state a JASTA aiding-and-abetting claim, which requires Plaintiffs to plausibly allege that BOP knowingly played a role in Hamas's <u>violent, life-endangering</u> activities. Plaintiffs have not so alleged, and their sole cause of action must be dismissed.

### B.   Plaintiffs Cannot Meet the "Awareness" Requirement, and Misstate Case Law in an Effort to Avoid the Requirement.

Essentially conceding that they cannot meet the required *mens rea* standard for their JASTA claim as clearly and repeatedly established in the above cases, Plaintiffs instead seek to <u>avoid</u> that standard by presenting a distorted recitation of the facts of *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), whose factors the Second Circuit distilled in *Linde* and *Siegel* for use

13

in JASTA aiding-and-abetting claims against banks.  Plaintiffs also mischaracterize the holdings of two other cases:  *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 47 (E.D.N.Y. 2019), and *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 267-68 (E.D.N.Y. 2019); and an oral ruling from *Estate of Hirshfeld v. Bank of China, Ltd.*, No. 18-cv-1982 (S.D.N.Y. Aug. 9, 2019).  *See* Opp. at 1-2, 31-32.  Of course, this Court is bound by the Second Circuit's distillation of the *Halberstam* factors in *Linde* and *Siegel*, rather than by Plaintiffs' creative reinterpretation of those factors.

Further, Plaintiffs fail to show that *Miller*, *Lelchook*, and *Estate of Hirshfeld* depart in any way from the aiding-and-abetting standards expounded in *Linde* and *Siegel*.  In none of those cases did the court find, as Plaintiffs represent, that JASTA "does *not* require that a defendant . . . know its support is specifically assisting violent acts or the specific terrorist attacks at issue," Opp. at 1.  Indeed, *Miller* and *Lelchook* hold precisely the opposite.  In *Miller*, the court explicitly ruled that "to be liable a defendant must have been 'generally aware that it was thereby playing a role in Hamas's violent or life-endangering activities.'"  372 F. Supp. 3d at 47 (quoting *Linde* at 329).  The *Miller* court went on to find, based on facts entirely unlike those alleged here, that the defendant bank was generally aware of its role in Hamas's violent activities, given that, among other things, the defendant in that case "pledged $2,000,000" of its own funds to "bankroll the . . . Second Intifada"; processed "millions of dollars" for "Hamas entities" and "Hamas leaders"; and "administered a terrorist insurance scheme" that "provided over $35 million to martyrs and their families," as part of which the bank received "detailed lists containing the names of the martyrs, their personal information, and the date and manner of their death"; and a bank employee "called a terrorist to inform him" of his eligibility for a payment.  *Id.* at 39-40.  By contrast here, Plaintiffs allege only that BOP provided routine banking services to charitable and educational institutions.

In *Lelchook*, the court entered a default judgment against an unrepresented defendant. The court recognized that even in that circumstance, JASTA still required a finding "that [defendant] was 'generally aware' that it was playing a 'role in Hezbollah's violent or life-endangering activities." 393 F. Supp. 3d at 267. In the default context, the court found this standard was met, based on allegations that Iran—a U.S.-designated state sponsor of terrorism—had intentionally routed more than $50 million to Hezbollah through the defendant, a bank wholly owned by the Iranian government, and that it was unlikely Hezbollah would have had the ability to commit the attack at issue without the funds the defendant had provided. *Id.* at 264, 266-67. Nothing of that sort is alleged in the Amended Complaint here.

In the hearing transcript from *Estate of Hirshfeld*, attached as Exhibit A to the Opp., Judge Failla of the Southern District issued her oral decision without stating the precise requirements of a JASTA aiding-and-abetting claim. Judge Failla certainly did <u>not</u> find, as Plaintiffs misrepresent (Opp. at 1), that JASTA "does *not* require that a defendant . . . know its support is specifically assisting violent acts or the specific terrorist attacks at issue." Judge Failla denied the defendant's motion for judgment on the pleadings, noting that the defendant was alleged to have "advise[d] its customers as to how it might conceal the nature and identity of their U.S. banking transactions," Exhibit A at 10; that the defendant "executed transfers for known Hamas operatives" while "aware of the Hamas affiliations," *id.* at 13; and that "the Israeli government sent a delegation to China to spell out to China and by extension the [defendant bank] the significance of its assistance to Hamas," *id.* at 15-16. Judge Failla was particularly persuaded by that last allegation, which provided a detailed basis for the bank's alleged <u>actual</u> knowledge that its banking services were aiding Hamas. *Id.* at 13. By no stretch of the imagination is anything like that alleged in the Amended Complaint here.

None of these decisions suggests that the "awareness" standard for a JASTA aiding-and-abetting claim can be met based on anything less than a plausible allegation that the defendant bank was "aware" of its role in an FTO's "violent or life-endangering activities."  Indeed, the courts in *Miller* and *Lelchook* explicitly recognized that standard.  In short, *Linde* and *Siegel* provide the governing liability standards, and Plaintiffs' allegations fall far short of satisfying them.

There also is no merit to Plaintiffs' argument that BOP "calls for a higher mens rea standard than does JASTA." Opp. at 37.  To the contrary, it is Plaintiffs who misstate JASTA's *mens rea* requirement by arguing it is sufficient to allege that BOP was aware merely of "HAMAS's overall illegal and tortious activity," and that "violence was foreseeable," Opp. at 34, 37 (emphasis added).

Putting aside that Plaintiffs do not plausibly allege any such awareness on BOP's part, Plaintiffs' proposed standard cannot be reconciled with *Linde*, *Siegel*, *O'Sullivan*, *Weiss*, *Strauss*, *Kaplan*, *Honickman*, *Averbach*, and even the cases to which Plaintiffs themselves cite.  Those decisions make clear that, instead, Plaintiffs must plausibly allege that BOP was aware that by providing routine financial services, BOP was itself playing a role in violent, life-endangering activity.  Plaintiffs' allegations do not come anywhere close to establishing such awareness on the part of BOP, particularly when they concede that BOP's allegedly relevant customers engaged in charitable and educational activity, not violent activity.  Am. Compl. ¶ 618; Opp. at 5.

In an effort to elude this clear requirement, Plaintiffs instead seek to import the *mens rea* standard applicable to a primary liability claim under the ATA into their JASTA secondary liability claim.  But Plaintiffs cannot do so, because an ATA primary-liability claim requires only that a plaintiff plausibly allege a defendant's "knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities."

*Linde*, 882 F.3d at 329-30.  As *Linde* and other courts have specifically held, "the threshold for demonstrating the mens rea for JASTA liability is <u>higher</u> than that needed for an ATA claim of providing material support to a terrorist organization."  *See Siegel*, 933 F.3d at 224 (affirming dismissal of JASTA aiding-and-abetting claim and adopting *Linde*'s holding that "aiding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*.") (emphasis in original); *Honickman*, 2020 U.S. Dist. LEXIS 7222, *21 (JASTA aiding-and-abetting requires "a higher *mens rea* than that sufficient to establish material support in violation of the ATA, 'which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities.'" (quoting *Linde*, 882 F.3d at 329-30)); *Weiss*, 381 F. Supp. 3d at 239 (holding that the mens rea standard under JASTA "is different from the mens rea required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities."); *Kaplan*, 405 F. Supp. 3d at 535 ("Even assuming, *arguendo*, that Defendant knew . . . about the Five Customers' relationships with Hizbollah, failure to . . . adhere to sanctions and counter-terrorism laws do not, on their own, equate to knowingly playing a role in terrorist activities."); *Averbach*, 2020 U.S. Dist. LEXIS at *49 (recognizing "the threshold for demonstrating the mens rea for JASTA liability is higher than that needed for an ATA claim of providing material support to a terrorist organization.").

The court in *Honickman* for these reasons rejected the same aiding-and-abetting liability theory advanced by the same plaintiffs' counsel here, holding, "it is not enough for Plaintiffs 'to plausibly allege that [a defendant bank] was generally aware of its role in terrorist activities, from which terrorist *attacks* were a natural and foreseeable consequence.'"  2020 U.S. Dist. LEXIS

7222, *21 (quoting plaintiffs' opposition brief, emphasis in original).  Similarly, the magistrate judge in *Averbach* explicitly held that "[m]erely providing banking services to a Hamas-affiliated charity, does not satisfy JASTA's mens rea requirement," 2020 U.S. Dist. LEXIS 10902, *42.  The district judge endorsed this analysis, confirming that the required *mens rea* had not been alleged. 2020 U.S. Dist. LEXIS 40430, *10.

At its core, Plaintiffs' liability theory is that BOP provided banking services to charitable and educational institutions—none of which was designated as a terrorist by the U.S. government during the relevant period—that somehow were affiliated with Hamas.  Opp. at 37.  This theory would be insufficient to pursue even an ATA primary-liability theory, as Plaintiffs implicitly concede by not alleging a primary-liability "material support" claim.  Given the far more exacting *mens rea* standard for a JASTA aiding-and-abetting claim, Plaintiffs' conclusory allegations that BOP's banking services indirectly provided support to Hamas through educational and charitable institutions that BOP serviced, cannot satisfy the *Linde/Siegel* requirement to plausibly allege that BOP was "aware" it was playing a "role" in terrorist activity.

### C.    Plaintiffs Do Not Plausibly Allege BOP was Aware of any Connection Between its Alleged Customers and Hamas.

Plaintiffs have not plausibly alleged even that BOP was aware of <u>any</u> connection between its alleged customers and Hamas.  Plaintiffs point only to "public pronouncements" of such a supposed connection (Opp. at 3-4, 35-37), but this is insufficient to satisfy the *Linde/Siegel* standard, as several other courts have found in look-alike JASTA cases against other banks.  *See Kaplan*, 405 F. Supp. 3d at 535 (dismissing JASTA aiding-and-abetting claim against bank because reports in "Hizbollah websites," "television and radio stations" and "various English-language publications" were insufficient to put bank on notice of its customers' affiliation with terrorist organization where "Plaintiffs nowhere allege . . . that Defendant read or was aware of

such sources."); *see also Honickman*, 2020 U.S. Dist. LEXIS 7222, *13-14 (dismissing aiding-and-abetting claim where plaintiffs alleged "public statements" connected bank customer to Hamas, but not that bank "was aware of these facts.").

Those holdings apply with equal force here.  Plaintiffs allege similar sources of information existed that purportedly could have made BOP aware of a connection between its customers and Hamas.  But Plaintiffs have not plausibly alleged that BOP actually was aware of those sources.

An analysis of recent JASTA decisions confirms that Plaintiffs' allegations fail to allege even this type of general awareness.   In *Averbach*, the defendant bank, Cairo Amman Bank ("CAB") supposedly provided financial services to "seventeen charities alleged to be members of Hamas's civilian infrastructure," as well as "four prominent members of Hamas," 2020 U.S. Dist. LEXIS 10902, *8.  The *Averbach* plaintiffs contended "that CAB knew or should have known that the charity Account Holders were affiliated with Hamas based on Western media reports, terrorism designations from the Israeli government, and in some cases, the identity of charity's leadership, who were alleged to be prominent members of Hamas," as well as the fact that the PA had temporarily closed some of the charities prior to the attacks at issue, and that "CAB knew or should have known that the individual Account Holders were 'well-known Hamas leaders,' based on Western media reports, Israel's designations, and their public facing roles on behalf of Hamas." *Id.* at *10.   Nonetheless, Magistrate Judge Parker found that "none of the allegations in this case support a conclusion that CAB knew the funds transferred to the Account Holders would be used for terrorist activities, let alone the Attacks that injured Plaintiffs or their relatives."  *Id.* at *44; *see id.* at *41 ("Allegations that a defendant bank was generally aware it was playing a role in terrorist activities by virtue of media and non-U.S. governmental designations . . . are insufficient absent allegations that the defendant actually read or was aware of the designations and media reports.").

District Judge Woods adopted Magistrate Judge Parker's report and recommendation "in its entirety."  2020 U.S. Dist. LEXIS 40430.

Similarly, here, there is no allegation that anyone at BOP saw or heard any of Hamas's purported "public pronouncements" regarding BOP's alleged customers, or read any of the press reports alleged in the Amended Complaint, or was aware of any purported "overlap" between the leaderships of Hamas and the charitable and educational entities at issue.  *See* Moving Brief at 24-27.  Moreover, Plaintiffs have not plausibly alleged that BOP was aware, from the Palestinian government's temporary office closures or account-freezes of certain entities (*e.g.*, Am. Compl. ¶¶ 594, 703-711), that any BOP customer was affiliated with Hamas or with the Attacks, because Plaintiffs have not plausibly alleged that BOP was even aware of the office closures, and the Palestinian government circular to the banks effecting the account-freezes did not mention Hamas, or identify any BOP customer as being affiliated with Hamas.  Moving Brief at 25-27 and Exhibit 1.  Further, none of the charitable and educational institutions at issue was designated in the United States or Palestine during the relevant period, and Plaintiffs concede that the charitable and educational institutions at issue "included kindergartens, schools and mosques," Opp. at 5.

Plaintiffs have failed to plausibly allege that BOP was "aware" that by providing banking services to entities that were not designated by the United States or Palestine during the relevant period, and which Plaintiffs acknowledge performed social work, BOP was playing a "role" in Hamas's violent or life-endangering acts.  Plaintiffs' cause of action must be dismissed.

### D.    Plaintiffs Have Not Plausibly Alleged that BOP Provided Knowing and Substantial Assistance to the "Person[s] Who Committed" the Attacks.

Plaintiffs' aiding-and-abetting claim must be dismissed for the separate reason that Plaintiffs have not plausibly alleged that BOP "knowingly provid[ed] substantial assistance" to the "person who committed" the terrorist act.  18 U.S.C. § 2333(d)(2); *see Linde*, 882 F.3d at 329;

*Siegel*, 933 F.3d at 223 ("the defendant must knowingly and substantially assist the principal violation."); *Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 650 (E.D.N.Y. 2017).

As a threshold matter, Plaintiffs have not plausibly alleged that BOP provided <u>any</u> assistance to the "person who committed" the terrorist act. Plaintiffs allege that Hamas committed each of the Attacks. But Plaintiffs do not allege that Hamas itself, or any of the individual perpetrators of the Attacks, held an account at BOP or received any banking services from BOP. Further, Plaintiffs do not allege that any BOP customer was involved in preparing for or in carrying out any of the Attacks, or that a single dollar processed through any BOP account was ultimately provided to Hamas itself or to any of the individual perpetrators of any Attack, and then used to carry out an Attack. Accordingly, any alleged banking services BOP provided to its customers could not have "substantially assisted" any of the Attacks. Other courts in this Circuit have dismissed JASTA aiding-and-abetting claims against financial institutions when faced with substantively the same allegations. *See Siegel*, 933 F.3d at 225; *Kaplan*, 405 F. Supp. 3d at 536; *Honickman*, 2020 U.S. Dist. LEXIS 7222, *30-35; *Averbach*, 2020 U.S. Dist. LEXIS 10902, *53-55, *adopted*, 2020 U.S. Dist. LEXIS 40430.

Even moving away from the *Linde/Siegel* standards, Plaintiffs fail to plausibly allege the JASTA-required substantial assistance when their allegations are measured against the *Halberstam* six-factor test. Those factors are (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance. *Linde,* 882 F.3d at 329 (citing *Halberstam*, 705 F.2d at 483-84). Applied to the allegations in Plaintiffs' Amended Complaint, the *Halberstam* factors confirm that Plaintiffs have not plausibly

alleged that BOP knowingly and substantially assisted any Attack or the "person[s] who committed" any Attack, requiring dismissal of Plaintiffs' JASTA claim.

First, there is no plausible allegation that BOP encouraged the Attacks <u>at all</u>, or provided any funds to Hamas or the perpetrators of the attacks. *See Siegel*, 933 F.3d at 225 (factor favors dismissal where plaintiffs "have not plausibly alleged that [defendant] encouraged the heinous [attacks] or provided any funds to [the FTOs or perpetrators of the attacks]."); *Honickman*, 2020 U.S. Dist. LEXIS 7222, *31; *Averbach*, 2020 U.S. Dist. LEXIS 10902, *52.

For the second *Halberstam* factor, the amount of assistance given, Plaintiffs point to allegations that BOP provided "multiple bank accounts and funds transfers for" the alleged customers at issue, Opp. at 39. But Plaintiffs fail to link those alleged customers to any Attack, or otherwise allege that any funds processed by BOP were sent to any terrorist or terrorist organization, or were otherwise used to further "violent or life-endangering activities." *See Honickman*, 2020 U.S. Dist. LEXIS 7222, *32 (even assuming a bank's customers "did work to drum up political support for Hamas," no allegations that bank's assistance "went towards Hamas' violent activities."); *Siegel,* 933 F.3d at 225; *Kaplan*, 405 F. Supp. 3d at 536. Accordingly, the second *Halberstam* factor also favors dismissal.

Plaintiffs admit that the third factor, BOP's presence or absence at the time of the Attacks, favors dismissal, as they do not allege that anyone from BOP was present at the time of the Attacks.

Plaintiffs argue that the fourth factor, BOP's relation to the principal—Hamas—weighs against dismissal, because BOP "act[ed] as [Hamas's] banker and facilitate[ed] international funds transfers on its behalf," Opp. at 39. But Plaintiffs have not plausibly alleged that BOP provided any banking services, or any funds, to Hamas. As in *Averbach*, 2020 U.S. Dist. LEXIS 10902, *53, "Plaintiffs have not pleaded that [BOP] had any type of relationship other than an arms-length

business relationship with [its alleged customers]. . . .  Thus, Plaintiffs have failed to plead facts indicating a close relationship of the kind in *Halberstam*.”  The same is true here.  Plaintiffs have alleged only an arms-length business relationship between BOP and the charitable and educational institutions at issue, and have alleged no connection between BOP and Hamas at all.  This factor favors dismissal.

With respect to the fifth factor, BOP's state of mind, Plaintiffs refer to BOP's purported “awareness that it was holding accounts for HAMAS over years.”  Opp. at 39.  But as set forth herein, Plaintiffs have not plausibly alleged that BOP knew or intended its banking services would be used to facilitate any Attack or other violent or life-endangering act, or that BOP was “aware” that it was playing a “role” in violent or life-endangering activities.

Finally, for the sixth factor, the period of BOP's assistance, Plaintiffs allege that “the duration of BOP's material support for HAMAS . . . extended at a minimum from 2000 through 2003,” Opp. at 39.  But Plaintiffs have not plausibly alleged that BOP provided <u>any</u> assistance, for <u>any</u> length of time, to Hamas or the individual perpetrators of the Attacks.  Plaintiffs have not identified a single transaction, at any time, that they claim gives rise to their injuries, let alone multiple such transactions over an extended period of time.  Plaintiffs have not alleged a <u>single</u> transaction or a <u>single</u> dollar processed through BOP that was provided to Hamas and then used to facilitate any Attack.  All six *Halberstam* factors favor dismissal.

In summary, Plaintiffs have not plausibly alleged that BOP was “aware” it was playing a “role” in the Attacks or any other violent or life-endangering acts, <u>or</u> that BOP “knowingly” and “substantially assisted” in perpetrating the Attacks—<u>both</u> of which are required to state a claim for aiding and abetting under JASTA.  The Amended Complaint must be dismissed.[4]

---

[4]  Importantly here, unlike in *Averbach*, there is neither a need nor justification for granting Plaintiffs leave to amend.  Plaintiffs here opted to amend their complaint in response to BOP's initial motion to dismiss, whereas the *Averbach*

III.   **PLAINTIFFS MATANYA NATHANSEN, JULIE AVERBACH, AND NEVENKA GRITZ MUST BE DISMISSED FOR LACK OF STANDING.**

As BOP argued in its Moving Brief, Plaintiffs Matanya Nathansen, Julie Averbach, and Nevenka Gritz are foreign nationals, not U.S. nationals, and therefore under the ATA's plain language, they do not have standing to sue for their own injuries. The ATA gives them standing only to sue in the capacity of a representative for a U.S. national allegedly killed as a result of an Attack—*i.e.*, as that person's estate, survivor, or heir. *See* Moving Brief at 32-34.

These three Plaintiffs were also plaintiffs in *Averbach v. Cairo Amman Bank*. In that case, these Plaintiffs have now been found to lack standing on precisely these grounds. As the magistrate judge found in that case, "the text" of the ATA "bar[s] personal injury claims by foreign nationals insofar as it specifies that the injury must be to a 'national of the United States' and that suit may be brought by the injured national 'or his or her estate, survivors, or heirs' for injuries to the national." *Averbach*, 2020 U.S. Dist. LEXIS 10902, at *30. Moreover, as also found in *Averbach*, the ATA's legislative history supports this interpretation. *See* Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Courts & Admin. Practice of the S. Comm. on the Judiciary, at 46, 101st Cong. 84 (1990) (statement of Sen. Strom Thurmond) (stating that the ATA would allow family members to file a lawsuit on behalf of a slain or injured relative) (cited in *Averbach*, 2020 U.S. Dist. LEXIS 10902, at *31). Those conclusions were affirmed by Judge Woods, who dismissed these Plaintiffs' claims with prejudice. 2020 U.S. Dist. LEXIS 40430, *10-12.

---

plaintiffs declined the opportunity to do so. As a result, Plaintiffs here already have had two opportunities to try to state a legally-sufficient aiding-and-abetting claim, and have failed to do so for the reasons explained above and in BOP's Moving Brief. Because Plaintiffs have now twice failed to state a legally-sufficient aiding-and-abetting claim, their claims should be dismissed with prejudice.

Based on the plain language of 18 U.S.C. § 2333(a), and as found in *Averbach*, Plaintiffs Matanya Nathansen, Julie Averbach, and Nevenka Gritz lack standing, and this Court now should dismiss their claims with prejudice.

## IV.   THE STEINHERZ PLAINTIFFS MUST BE DISMISSED FOR LACK OF STANDING.

The claims of Plaintiffs Altea Steinherz, Jonathan Steinherz, Temima Steinherz, Joseph Ginzberg, Peter Steinherz, and Laurel Steinherz (collectively, the "Steinherz Family") also must be dismissed, because the injuries these Plaintiffs claim are not "fairly traceable" to any conduct by BOP.  The Steinherz Family do not allege injury from an Attack, or even that they were present at the scene of an Attack.  Rather, they claim that Altea Steinherz and Jonathan Steinherz <u>heard</u> two bombs explode, and then they began walking home.  As they were walking, they came upon an unidentified "crazed-looking man," which caused them to "run" in the other direction, at which point Altea Steinherz fell and broke her left arm.  The other Steinherz Family claims are for emotional injury based on fears that Altea's falls may have caused harm to her pregnancy.

Plaintiffs do not allege that they were injured by the Attack, or even that they were at the scene of the Attack.  Rather, they were injured by an intervening cause—the startling appearance of the unidentified "crazed-looking man."  After the bombing, and until they saw the man, Altea and Jonathan Steinherz were <u>walking</u> home.  It was only as a result of seeing the unidentified man that they turned and began to run, which caused their injuries.

Plaintiffs do not allege that the "crazed-looking man" had anything to do with the Attack; with Hamas; with any alleged BOP customer; or with BOP itself.  Neither his presence on Plaintiffs' route home nor his alleged "crazed-looking" appearance was foreseeable or caused by

25

any conduct by BOP.  The Steinherz Plaintiffs lack standing because their injuries are not "fairly

traceable" to BOP's actions.  These Plaintiffs' claims must be dismissed.[5]

## CONCLUSION

For the reasons set forth above and in BOP's Moving Brief, the Amended Complaint

should be dismissed as against BOP in its entirety with prejudice.

Dated: March 10, 2020                         Respectfully submitted,

                                              **SQUIRE PATTON BOGGS (US) LLP**

                                              /s/ *Gassan A. Baloul*
                                              Gassan A. Baloul
                                              gassan.baloul@squirepb.com
                                              Mitchell R. Berger
                                              mitchell.berger@squirepb.com
                                              2550 M Street, NW
                                              Washington, D.C. 20037
                                              Telephone: (202) 457-6000
                                              Facsimile:  (202) 457-6315

                                              Joseph S. Alonzo
                                              joseph.alonzo@squirepb.com
                                              30 Rockefeller Plaza, 23rd Floor
                                              New York, New York 10112
                                              Telephone: (212) 872-9800
                                              Facsimile:  (212) 872-9815

                                              *Counsel for Defendant Bank of Palestine*

---

[5]  In *Averbach*, Magistrate Judge Parker recommended that the Steinherz Family's claims be permitted to continue. That portion of Magistrate Judge Parker's recommendation was not addressed by the parties in their subsequent briefs or in Judge Woods' order adopting Magistrate Judge Parker's recommendation.  For the reasons set forth herein, BOP respectfully submits that the Steinherz Plaintiffs have not plausibly alleged that their injuries are fairly traceable to BOP's conduct, and that their claims should be dismissed.