OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601          1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400    F. 201.265.0303                                                            T.212.354.0111

October 27, 2020

**VIA ECF**

Honorable Eric N. Vitaliano
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Singer, et al. v. Bank of Palestine,* Case No. 1:19-cv-00006 (ENV) (RML)
                **Letter Enclosing New Authority**

Dear Judge Vitaliano:

      Plaintiffs respectfully write to alert the Court to new authority in *Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, No. 19-cv-5394 (BMC), 2020 WL 6143654 (E.D.N.Y. Oct. 20, 2020). As here, *Henkin* involved claims brought under the Justice Against Sponsors of Terrorism Act ("JASTA") that a bank aided and abetted the Foreign Terrorist Organization Hamas by knowingly providing it with substantial financial services. The *Henkin* court denied the defendant's motion to dismiss on 12(b)(1) and 12(b)(6) grounds for multiple reasons applicable here.

      First, *Henkin* held that non-U.S. nationals may bring solatium claims in their own names resulting from the loss of a relative (and U.S. national) in a terrorist attack. Citing the same cases as Plaintiffs cited in their Opposition brief, ECF No. 38 ("Opp."), the *Henkin* court explained that "courts routinely permit the deceased individual's estate, survivors, and heirs to bring separate claims under the ATA," and "their nationality makes no difference." *Henkin* at *5. Defendant argues that these Plaintiffs lack standing, but tellingly addresses none of Plaintiffs' cases, offering only the lone outlier case *Averbach for Estate of Averbach v. Cairo Amman Bank*, No. 19-cv-00004 (GHW), 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020).[1] With *Henkin* joining the other cases permitting such claims (including as to *Plaintiffs here, see* Opp. at 42 (citing *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006))), *Averbach* remains the only case to hold that such plaintiffs lack standing.

      Second, *Henkin* rejected the argument that "plaintiffs are required to plead with specificity that the bank read or was actually aware of information connecting its customers to Hamas to survive a motion to dismiss." *Henkin* at *8. As the *Henkin* court noted, the argument is sourced only to "several district court cases," which are either "pending appeal before the Second Circuit

---

[1] In its opening brief, BOP cited a report and recommendation in *Rosenberg v. Lakshar-e-Taiba*, No. 12-cv-05816 (DLI) (CLP), (E.D.N.Y. Mar. 31, 2017), ECF No. 89 (unavailable on Westlaw), which did not address the plaintiffs' nationality in the context of the Anti-Terrorism Act ("ATA") at all, and held only that "the ATA does not afford the survivors independent causes of action where their decedents have not stated valid claims." *Id.* at *47.

or which heavily relied upon one of these cases"—including the cases relied upon by Defendant. *See* BOP Mem., ECF No. 37-1, at 25 ("[t]here is no allegation that anyone at BOP read any of these articles … or that anyone at BOP was otherwise aware of the statements allegedly contained in the articles," or "was aware the Palestinian Authority 'temporarily closed what it identified as 16 Hamas institutions'") (quoting Amended Complaint ("AC") ¶ 594); BOP Reply Mem., ECF No. 39, at 11-13.

As the *Henkin* court explained, "[d]espite this supposed 'trend,' there is no such pleading requirement under JASTA or *Halberstam*. Nor is this interpretation consistent with the statute's broad remedial purpose and findings." *Henkin* at *8. Relying on Second Circuit precedent, the court showed that, absent discovery, a plaintiff may—and often must—rely on publicly available information to support the inference that a bank knew its customers were affiliated with a terrorist group, as banks generally do not air their "dirty laundry." *Id.* at *9 (citing cases). There, the court found "plenty of warning flags providing Kuveyt Bank reason to know that the funds it transferred on its customers behalf would flow to Hamas and thus create a need to investigate the background of its customers." *Id.* at *12.[2] Many of the same red flags are implicated here—including Israeli designations (which applied to BOP's operations in the Palestinian Territories) of BOP customers and transferors, the U.S. designation of BOP customer Holy Land Foundation as a Specially Designation Global Terrorist ("SDGT") in 2001, and shared leadership between BOP customers and Hamas. *See* Opp. at 4-5 (shared leadership), 6 (HLF, designated in 2001), 8 (Israeli designation of *al-Mujama al-Islami* in 2002), 9-13 (shared leadership), 14 ("BOP continued to transfer funds on Interpal's behalf after the U.S. designation, and it even sponsored a program with it in 2016, 13 years later"), 36 (*al-Salah*, designated in 2002); *Henkin* at *4, *8.[3]

Finally, *Henkin* rejects the argument that JASTA requires more knowledge of a role in violence than does *Halberstam*. *Henkin* explained that in *Halberstam* defendant Hamilton's aiding and abetting liability rested on her "general awareness of her role *in the continuing criminal enterprise*" from which violence was just "reasonably foreseeable." *Henkin* at *7 (quoting *Halberstam*, 705 F.2d at 488) (emphasis added). She "did not intend to facilitate violence or even know that Welch was committing burglaries," *id.*—much less (an *unplanned*) murder. Applying *Halberstam*, *Henkin* found that "it is plausible that Kuveyt Turk, similar to Hamilton, was aware of the various warning signs and red flags about its customers from which they could infer that the funds from these accounts would make their way to Hamas," making violence foreseeable. *Id.* Indeed, BOP provided financial services to designated Hamas-controlled entities that have a role in Hamas's *violent* acts. *See, e.g.*, AC ¶¶ 593, 595, 612-13, 624-28, 638-43, 661-63, 670-74, 677, 686-87, 697.

---

[2] In fact, one of BOP's alleged Hamas customers — the Islamic University of Gaza — is one of the same entities discussed in the *Henkin* case. Compare AC ¶¶ 622-30 *and Henkin* at *3-4. *See also id.* (crediting allegations that "since the 1990s, IUG has been identified exclusively with Hamas and has served as a principal source for recruitment into the terrorist organization's ranks in Gaza, including the al-Qassam Brigades – Hamas' terrorist apparatus.").

[3] In fact, Plaintiffs here have additional allegations, including the Palestinian Authority's temporary closures of and arrests of leaders of BOP's Hamas customers (along with the Palestinian Monetary Authority's 2001 freeze of al-Salah's accounts) *before and during* the attacks at issue. *See, e.g.*, AC ¶¶ 594-95, 604-05, 652, 672, 677.

**Hon. Eric N. Vitaliano, U.S.D.J.**
**Oct. 27, 2020**
**Page 3 of 3**

For the reasons set forth in *Henkin* and in Plaintiffs' brief, Plaintiffs respectfully request that Defendant's motion to dismiss be denied in its entirety.

                                              Respectfully submitted,

                                              /s/ Michael J. Radine

Encl.

cc:      All Counsel via ECF