OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601        1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400     F. 201.265.0303                                                                T.212.354.0111

November 2, 2020

**VIA ECF**

Honorable Eric N. Vitaliano
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Singer, et al. v. Bank of Palestine,* Case No. 1:19-cv-00006 (ENV) (RML)

Dear Judge Vitaliano:

      Plaintiffs respectfully write in response to Defendant's October 29, 2020 letter (ECF No. 43) ("Def. Letter") concerning *Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, No. 19-cv-5394 (BMC), 2020 WL 6143654 (E.D.N.Y. Oct. 20, 2020).

      As previously noted, *Henkin* rejects the argument that JASTA requires that the defendant possess more knowledge of its role in violence than does *Halberstam*. *Henkin* explained that in *Halberstam* defendant Hamilton's aiding and abetting liability rested on her "general awareness of her role *in the continuing criminal enterprise*" from which violence was just "reasonably foreseeable." *Henkin* at *7 (quoting *Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983) (emphasis added). She "did not intend to facilitate violence or even know that Welch was committing burglaries"—much less (an *unplanned*) murder. *Id.* As explained below, each of Defendant's arguments is erroneous.

      First, Defendant's letter argues that the *Henkin* court erroneously relied on *Halberstam*'s central requirement that the defendant have "general awareness of her role *in the continuing criminal enterprise*." Def. Letter at 2. Defendant reasons that "criminal enterprise" must mean "an organization" and that a general awareness of one's role supporting a terrorist "organization" "is insufficient under *Linde* and *Siegel*, which require not a defendant's participation in a criminal organization, but instead a defendant's awareness of its own role in the 'violent or life-endangering activities.'" *Id.*

      But this assertion is flatly incorrect. The "continuing criminal enterprise" in *Halberstam* was not a person, and certainly not an "organization"—it was an ongoing *scheme* to traffic in stolen goods. What gave rise to the defendant's liability was her knowing participation in that scheme, from which Dr. Halberstam's murder was a natural and foreseeable consequence. Had the defendant provided assistance to Dr. Halberstam's murderer that was wholly unrelated to their

joint efforts to traffic in stolen goods, that assistance would not have resulted in her liability for murder. Likewise, *Linde* held that assistance provided to a foreign terrorist organization unrelated to terrorism—such as the deconflicting training at issue in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21-22 (2010) (cited as an example in *Linde*)—might not be sufficient to show a defendant's general awareness in a criminal enterprise that could foreseeably result in terrorist violence. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 330 (2d Cir. 2018). So too in *Henkin*, the court correctly noted that at the Rule 12(b)(6) stage, plausible allegations that a defendant bank knowingly provided banking services to a terrorist organization also supports the reasonable inference that "terrorist and violent activities were a natural and foreseeable consequence" of that conduct.

As the *Henkin* court further explained, *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), is inapposite because the plaintiffs in *Siegel* failed to plausibly allege that the HSBC defendants processed *any transactions at all* for a terrorist organization or any of its affiliates— only another bank that had customers alleged to have raised funds for terrorist groups. Thus, "it was never alleged that HSBC was directly dealing with a terrorist organization or any of its known affiliates during the relevant timeframe…. Where the *Siegel* Court could excuse HSBC's ignorance of its customer's customers, a different standard should apply when a defendant-bank is dealing directly with a known terrorist organization, its fundraisers, mere conduits, or alter egos." *Henkin* at *11.

Second, Defendant has no response to the Second Circuit authority cited in *Henkin* showing that plaintiffs need not (and often cannot), "plead with specificity that the bank read" information connecting its customers to a terrorist organization, "absent discovery." *Henkin* at *8-9. Instead, Defendant simply cites again the same "several district court cases … many of which are pending appeal before the Second Circuit or which heavily relied upon one of these cases." *Id.* at *8. Again, "this supposed 'trend'" finds no basis in "JASTA or *Halberstam*" or controlling Second Circuit law. *Id.*

Third, in order to refute *Henkin*'s substantial assistance analysis, Defendant argues that the standard for *general awareness* in *Linde*—that knowingly providing support to an organization does not itself necessarily prove general awareness of a role in terrorist activities—is the standard for *substantial assistance*. *See* Def. Letter at 3. Having baldly (and self-servingly) misconstrued *Linde*, Defendant then argues that Plaintiffs must allege that transactions must be traced to "the perpetrators of any of the terrorist acts" or "used to prepare for or commit those Attacks"—a standard found nowhere in *Linde*, where the plaintiffs did not allege that the financial services Arab Bank provided were traceable to the three attacks at issue in that appeal.[1] Courts have flatly rejected a "tracing" requirement for ATA claims. *See, e.g.*, Pls. Opp. at 27 (citing *Strauss v. Crédit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 433 (E.D.N.Y. 2013) ("However, plaintiffs who bring an

---

[1] Defendant also argues that Plaintiffs did not relate the transactions to "any other violent or life-threatening activity." Def. letter at 3. In reality, Defendant held accounts for – among other Hamas institutions – the Islamic University of Gaza. Citing similar allegations in the *Henkin* complaint, Judge Cogan noted that "The al-Qassam Brigades had long used IUG's facilities for terrorist activities and training, such as storing weapons on its campus, using its laboratories to develop and manufacture weapons, and using its rooms to hold meetings for Hamas leadership and operatives." " *Henkin* at *4.

**Letter to Hon. Eric N. Vitaliano**
**Nov. 2, 2020**
**Page 3 of 3**

ATA action are not required to trace specific dollars to specific attacks to satisfy the proximate cause standard. Such a task would be impossible and would make the ATA practically dead letter because '[m]oney is fungible.'")).[2]

   Finally, Defendant yet again elides the overwhelming set of cases holding that non-U.S. national plaintiffs may bring solatium claims under the ATA. It also repeats that "these same three plaintiffs have already had their claims dismissed with prejudice" in one outlier decision, *Averbach for Estate of Averbach v. Cairo Amman Bank*, No. 1:19-CV-00004-GHW, 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020), again ignoring that "*these same three plaintiffs*'" claims were upheld in *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006).

                Respectfully submitted,

                /s/ Michael J. Radine

cc:  All Counsel via ECF

---

[2]  Defendant likewise suggests that *Linde* requires Plaintiffs to allege that BOP's assistance to Hamas went to the specific "terrorist act from which a plaintiff's injuries arise." Def. Letter at 3. Of course, Hamilton did not provide assistance specific to the murder of Dr. Halberstam—she merely acted as the property crime enterprise's "banker, bookkeeper, recordkeeper, and secretary." *Halberstam*, 705 F.2d at 487.