# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
SARRI ANNE SINGER, *et al.*,          :
                                       :
        Plaintiffs,         :  Case No. 19-cv-00006 (ENV)(RLM)
                                       :
  -against-                            :
                                       :
BANK OF PALESTINE,                     :
                                       :
        Defendant.          :
_____:

**PROTOCOL AND STIPULATION REGARDING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION ON DEFENDANT BANK OF
PALESTINE'S EXABYTE TAPE 6**

      This Protocol and Stipulation Regarding Production of Electronically Stored Information ("ESI Protocol") is between Bank of Palestine ("Defendant") and the Plaintiffs in *Singer v. Bank of Palestine* (jointly "the Parties") and shall govern the Parties with respect to the processing and searching of ESI from Defendant's Exabyte Tape 6 cartridge by a qualified independent third-party forensic vendor ("Vendor"). Plaintiffs will provide the name and contact information of one or more proposed vendors, and a proposed budget, to Defendant. The Parties then will meet and confer in an effort to agree on a Vendor and an estimated budget for the project prior to commencement of any work.

**I.  GENERAL PROVISIONS**

      **A.  Applicability:** This Protocol and Stipulation will govern the production of computer-generated information, data, and metadata of any kind stored on or extracted from Defendant's Exabyte Tape 6 cartridge.

      **B.  Cooperation:** The Parties shall cooperate to provide the Vendor with the necessary and sufficient technical information to enable the Vendor to effectively and efficiently extract, transform and load ("ETL") Defendant's ESI from the database files and message archive ("MEAR") files from Tape 6. The Parties shall cooperate to identify and facilitate the Vendor's access to the contents of encrypted, password-protected, corrupted, or difficult-to access files from Tape 6. The Parties will work cooperatively with the Vendor to fashion reasonable and effective search strategies and appropriate measures for quality assurance and quality control. Plaintiffs will disclose to Defendant all proposed measures before they are implemented, including the proposed use of mechanized or automated tools to cull potentially responsive data, and will make their IT consultant available to meet and confer with Defendant's IT consultant to resolve any issues raised by the proposed measures. Any proposed measures must be disclosed to Defendant at least one full business day prior to implementation. If Defendant objects to the implementation of any such proposed measures, the measures will not be implemented until Defendant's objections are resolved.

**C. Communications Between the Parties and the Vendor**: The Parties will communicate with the Vendor is a transparent manner.

1. Any written communications to or from the Vendor will be shared with both Parties, except transactional data recovered from Exabyte Tape 6, which will first be disclosed to Defendant as set forth herein. However, the Vendor will inform the Parties of generalized information about all transactional data provided to Defendant, as described in section IV.E.

2. Both Parties will be given the reasonable opportunity to participate in any verbal communications with the Vendor. Any verbal communications made with the Vendor where one of the Parties' representatives is unavailable to participate will be summarized in a communication from the Vendor to the Parties. To the extent any verbal communication with the Vendor may involve the Vendor providing information to Plaintiffs and/or the Parties about customer-identifying information from specific transactions recovered from Exabyte Tape 6, such information must be disclosed to the parties jointly, Vendor must notify Defendant in advance of such disclosure, and Defendant must be afforded an opportunity to object before the disclosure is made. If an objection is made and the Parties are unable to resolve the dispute, they may seek direction from the Court.

3. Defendant will be afforded an opportunity to review and approve all search terms and database queries proposed by Plaintiffs or the Vendor and to propose its own search terms prior to the execution of searches of Defendant's ESI from Exabyte Tape 6 by the Vendor. If Defendant objects to search terms or database queries proposed by Plaintiffs or the Vendor, those search terms or database queries will not be executed until Defendant's objections are resolved by mutual agreement or at the direction of the Court.

**D.     Definitions**

1. **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.

2. **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media.

3. **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is

created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

4. **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

**A.** This section is intended to apply to the provision of transactional records recovered from Tape 6, in the event that the Vendor identifies any such records and provides them to Defendant.

**B.** **TIFFs:** All images of documents, database records and other items will be provided as single page TIFFs of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches unless in the reasonable judgment of the Vendor or the Defendant, a particular item requires a different page size. Each image will use the Bates number of the first page of the document as its unique file name. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall also be imaged so that this information is captured on the image file.

**C.** **Text Files:** Each ESI item provided by Vendor to Defendant under this Protocol and Stipulation shall be accompanied by a text file containing the text of the ESI (for example, a text file containing an OCR of a TIFF image). All text files shall be provided as a single document-level text file for each item, not one text file per page.

**D.** **Bates Numbering**

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document set; (2) maintain a constant length (0-padded) across the entire document set; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

2. If a Bates number or set of Bates numbers is skipped in a set of documents provided by Vendor to Defendant, the Vendor will so note in a cover letter or other communication.

3. The Vendor will brand all TIFF images in the lower righthand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.

**E.** **Load Files:** All items provided by Vendor to Defendant will be provided with a delimited data file or "load file." Acceptable formats for the load file are .log, .opt, .dii, .lfp, .txt, .dat, or .csv. Each Party will designate its preferred load file format. The load file must reference each TIFF in the corresponding document set. The total number of documents referenced in a document set's data load file should match the total number of designated document breaks in the

image load files in the document set. Each deliverable volume should limit directory contents to approximately 1000 files per folder.

      F.      **Color:** Documents or ESI containing color need not be provided initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then either Plaintiffs or Defendant may, in good faith, request that the document or ESI item be provided in its original colors, and such a request will not be unreasonably denied. The provision of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESI. All requirements for provision or production of documents stated in this Protocol and Stipulation regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format.

      G.      **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of the Protective Order entered by the Court in this litigation or has been redacted in accordance with applicable law or Court order, the designation shall be shown both on the face of all TIFFs pertaining to such item/document/record, and in the appropriate data field in the load file.

### III. FORMAT OF PRODUCTION OF ELECTRONICALLY STORED INFORMATION

      A.      **System Files:** ESI productions may be de-NISTed by the Vendor using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Based on recommendations by the Vendor, other file types may be added to the list of excluded files by agreement of the Parties.

      B.      **Time zones, Dates, and Timestamp Metadata Fields and Processing:** ESI documents, files, database records or other items shall be processed by the Vendor in a manner that preserves their original time zone, date, and timestamp metadata. For example, all ESI shall be processed by the Vendor so as to preserve the timestamps shown in each respective file's metadata reflecting when it was created or last saved, modified, or accessed (that is, as captured on Tape 6 by Defendant's 2007 backup of its IBM AIX server), not the time or date of collection or processing by Defendant, SullivanStrickler, or the Vendor.

      C.      **Production of Native Items:** The parties agree that Defendant shall produce any responsive ESI to Plaintiffs as TIFFs with an accompanying load file, and the native file, unless in the reasonable judgment of the Defendant particular ESI should be produced in a different manner, in which case Defendant will first notify Plaintiffs of the reason for the change. If the Plaintiffs object, Defendant will first confer with Plaintiffs to determine if their objections can be resolved, but if the Parties are unable to resolve the dispute, they can seek direction from the Court.

      D.      The Vendor shall exercise reasonable, good faith efforts to maintain all preserved and collected native files in a manner that does not materially alter or modify the native file or its metadata and Defendant shall do the same to the extent it transmits data to the Plaintiffs received from the Vendor.

**E.     Technical Exception Logs:** The Vendor shall identify any exception files and include on a log that lists the file name, custodian, and reason for exception any ESI that cannot be reviewed, produced and/or imaged because of technical issues: for example, due to corruption, unavailable password protection, proprietary software, or other technical issues.

## IV.    SEARCH TERMS AND DATABASE QUERIES FOR COLLECTING ESI

**A.     Scope:** This project is limited to the search and inspection of ESI from Defendant's Exabyte Tape 6.

**B.     Database Reconstruction and Searching.** Plaintiffs assert that implementing the capacity to search Defendant's Exabyte Tape 6 database files and data requires iterative and exploratory steps, including developing, testing and refining structured query language ("SQL") code for querying database records. The Parties will facilitate and cooperate with the Vendor in executing database reconstruction and the SQL query testing and refinement process.

**C.     Search Methods**: The Vendor will employ electronic searches to locate potentially responsive ESI from Exabyte Tape 6. The Parties understand that each search may require iterative and exploratory steps, including those discussed in IV.B above and other steps, such as refining search terms (in English and Arabic) and forensically analyzing operating system, software application and database management system ("DBMS") configurations and log files from Tape 6. The Parties will facilitate and cooperate with the Vendor in executing the necessary and sufficient forensic processes. The Plaintiffs have advised Defendant that in their view there is intrinsic value to available forensic tools that they believe increase the efficacy and efficiency of searches, including fuzzy searching; predictive coding; technology-assisted review; deduplication and near deduplication; and ETL technologies and methods.

**D.     Hit Count Report:** A hit count report will be provided by the Vendor in Microsoft Excel (or other format as agreed to by both Parties) for each search it runs (except for test searches). A hit count report must include at least the following information for both document and database searches and queries: *first*, the overall number of documents or database records being searched; *second*, the number of documents or database records hit by the search term or query with separate hits for individual documents or database records hit vs. documents or database records hit; and, *third*, the filenames of each unique document or database record hit by each search string or query (for example, documents or database records that would not be included in the search results but for the inclusion of that particular search term or query). For any Boolean search strings (e.g., XYZ/10 ABC or DEF), the Hit Count Report will provide information both for the search string as a whole as well as each individual component of the Boolean search string.

**E.     Generalized Search Results Report**. The Vendor will produce to both Parties generalized search result reports for each search containing the following types of information (if generated by the search): the total number of transactions identified by the search and for each such transaction dated on or before August 19, 2003, the transaction date, the role of the search term in the transaction (e.g., originator or beneficiary), and the currency; and for all such transactions dated after August 19, 2003, the total number of such transactions; the years in which such transactions occurred (e.g., 2004, 2005, etc.); and the number of such transactions that occurred in each year (e.g., 2004: 2 transactions, 2005: 10 transactions, etc.).

F.  **Validation:** The Parties will meet and confer regarding appropriate methods to verify and validate the recall of the Vendor's search methodology.

G.  **Non-Waiver:** The Parties' discussion of proposed search terms and database queries does not preclude Plaintiffs from requesting additional search terms and database queries during jurisdictional discovery or subsequent phases of discovery nor Defendant from objecting to the conduct of any such additional searches or queries, including but not limited to objections based on incurring costs for any such additional search terms or database queries requested.

H.  **Other Methods to Streamline Culling of ESI:** The Parties agree to meet & confer in good faith about any other technology or process that a the Vendor proposes to use to streamline the work performed by Vendor in this case (e.g., near deduplication, any technology assisted review or advanced analytic (i.e., non-Boolean) automated "filtering" or "culling" application to identify items which are potentially responsive or which are to be excluded from its production).

## V. SPECIAL ESI ISSUES

A.  **Hidden text:** ESI items processed after the execution date of this Protocol and Stipulation shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

B.  **Compressed Files:** Compression file types (e.g., .cab, .gz, .tar, .z, .zip) shall be decompressed in a reiterative manner to ensure that a zip archive within a zip file is decompressed into the lowest possible compression resulting in individual folders and/or files.

## VI. WORKFLOW AND CLAIMS OF WITHHOLDING AND REDACTIONS

A.  **Production Workflow**: In order to protect Defendant's confidential and non-relevant ESI, the Parties agree to the following production workflow:

1. **File Transfer**: Defendant will instruct SullivanStrickler to transfer both the processed and uncompressed files extracted from Exabyte Tape 6 to the Vendor.

2. **Extract, Transform and Load ("ETL")**: After receiving Defendant's files, the Vendor will extract, transform, and load Defendant's ESI from Exabyte Tape 6 – at the Vendor's discretion – into either a native application, an analytical database, or both.

3. **Vendor's Development and Testing of Search Strings and Database Queries**: The Vendor will develop, test and refine search strings for unstructured data in document files and SQL code for database queries of structured data in database files.

4. **Production Search Strings and Database Queries:** After finalizing the search strings and database queries developed with the Parties and approved by Defendant, the Vendor will run production versions of the search strings and database queries against Defendant's ESI from Exabyte Tape 6 for potentially responsive records.

5. **Hit Count Reports**: The Vendor will provide hit count reports and generalized search result reports to the Parties, consistent with the provisions of Section I(C) and Section

IV above, and will work with the Parties to iteratively improve the results of the search terms and database queries.

6. **Potentially Responsive Documents and Database Records**: With prior notification to Plaintiffs and after providing the Parties with applicable hit count reports and generalized search result reports, the Vendor will initially produce any potentially responsive transactional documents and/or database records solely to Defendant.

7. **Production of Responsive Documents and Database Records**: After reviewing the potentially responsive documents and database records identified by the Vendor, Defendant will produce all responsive documents and database records to Plaintiffs in accordance with this ESI Protocol and identify to the Vendor which, if any, potentially responsive documents and database records identified have not been produced to Plaintiffs.

B. **Production of Withholding Logs:** For any document or database record withheld in its entirety or produced but redacted, Defendant will produce withholding/redaction logs in Microsoft Excel format or any other format that permits electronic sorting and searching, except that the Defendant shall have no obligation to log transactional records that reflect SWIFT messages reflecting transactions made after August 19, 2003. Defendant will produce a separate withholding/redaction log for each production of records from the Vendor to Defendant within 14 days of the production of documents or database records to which a reason for withholding or redaction is asserted. If the volume of documents or database records sent to Defendant by Vendor would make it unduly burdensome to produce the withholding/redaction log within 14 days, Defendant shall so notify the Plaintiffs within 14 days of the production of records from the Vendor to Defendant and shall provide an estimated date by which the withholding/redaction log will be produced.

C. **Challenges to the Withholding or Redaction of Any Document:** Following the receipt of a withholding/redaction log, Plaintiffs may identify, in writing, the particular documents or database records that it believes require further explanation. Within fourteen (14) days of such an identification, the Defendant must respond to the request. If Defendant challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter shall be brought to the Court.

D. **"Relevancy" Redactions:** In any record produced to Plaintiffs (except for random samples), neither the Defendant nor the Vendor may make any redactions based upon the purported relevancy of a document or a portion of the document, except that, if a record contains multiple transactions or information relating to multiple transactions, of which some are responsive and some are non-responsive, the information relating to non-responsive transactions may be redacted or otherwise withheld from production to Plaintiffs.

E. **Protective Order**: All other issues of confidentiality or privilege, including the production of privileged or protected documents or information, shall be governed by the Protective Order. Officers, directors, employees, agents, and legal counsel are referred to as the "Parties" solely for the purposes of this ESI Protocol. All officers, directors, employees, and agents of Vendor who will perform work on this project or who otherwise may have access to Defendant's

ESI will read the Protective Order entered by the Court in this litigation and shall execute Exhibit A thereto. Vendor shall provide copies of the completed Exhibit As for all such officers, directors, employees, and agents prior to the initiation of Vendor's work on this project.

## VII. MISCELLANEOUS PROVISIONS

**A.** **Objections Preserved:** Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Nothing in this ESI Protocol shall be deemed to prevent a Party from seeking the Court's intervention with respect to any issues that may arise regarding any objections the Parties are unable to resolve without the Court's assistance. Likewise, nothing in this ESI Protocol shall be deemed to prevent any other Party from opposing relief sought from the Court.

**B.** **Modifications:** Any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing.

**C.** **Additional Information.** Plaintiffs may make reasonable requests for additional information from both Vendor and Defendant to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified database fields. Defendant shall be copied on any such requests made by Plaintiffs to Vendor for additional information, and shall be provided a reasonable opportunity (no less than 24 hours) to object to the request prior to Vendor providing the requested information. Should Defendant object to such a request, the Parties shall meet and confer in a good-faith effort within 24 hours of the objection to resolve the objection, and Vendor shall not provide any information in response to Plaintiffs' request until the objection is resolved. If an objection is made and the Parties are unable to resolve the dispute, they will promptly seek relief from the Court, including, to the extent the Court may deem necessary, a request to modify the terms of this protocol to avoid undue delay in the completion of the Vendor's work.

| | |
|---|---|
| **OSEN LLC** | **SQUIRE PATTON BOGGS (US) LLP** |
| /s/ Michael J. Radine | */s/ Gassan A. Baloul* |
| Michael J. Radine | Gassan A. Baloul |
| Gary M. Osen | Mitchell R. Berger |
| 190 Moore Street, Suite 272 | 2550 M Street, NW |
| Hacksensack, NJ 07601 | Washington, DC 20037 |
| Tel.: 202-265-6400 | Telephone: 202-457-6000 |
| *Attorneys for Plaintiffs* | Joseph S. Alonzo |
| | 1211 Avenue of the Americas, 26th Floor |
| | New York, NY 10036 |
| | Telephone: 212-872-9800 |
| | *Attorneys for Defendant* |