



190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York 10018
T: 212 354 0111
www.osenlaw.com

October 13, 2025

**VIA ECF**

Hon. Robert M. Levy
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Singer v. Bank of Palestine*, 19-cv-0006 (ENV)(RML)

Dear Judge Levy:

Pursuant to the September 30, 2025, Minute Order, we write on behalf of all parties to provide an update on our discussions with the independent vendor, Forensic Risk Alliance ("FRA").

The parties are in broad terms agreed that FRA's proposal to resolve the questions raised by the Court is adequate. The parties disagree over how to proceed from here, however, and their positions are set forth below.

**Plaintiffs' Position**

As the Court will recall, Plaintiffs requested that those costs be shifted to BOP and the Court directed the parties to have "FRA tell us how much it's going to cost to do this and then I won't be trying to make a decision in the dark." *Id.* at 54. FRA has confirmed that after various clarifications from the parties, its estimated total fees for this project is "around $69,000."

Plaintiffs propose that the parties submit short supplemental letter briefs (maximum of five pages) on their respective positions on cost allocation by 5pm ET October 27, 2025.

Defendant have previously advised that they "believe there is no basis for cost-shifting at this time," because Plaintiffs are seeking "to confirm the information" BOP provided and "is confident that the information it has provided is materially accurate and complete." In BOP's view: "<u>At least</u> unless and until <u>after</u> FRA's work shows that the information BOP has provided is materially deficient, there is no basis for cost-shifting at all."

From Plaintiffs' perspective, this fundamentally misunderstands the situation. The issue is not whether the Court should shift FRA's costs to BOP *if* BOP was wrong about its account numbering information—the Court should shift those costs because, among other reasons, BOP could not give consistent explanations of its account numbering systems. As Plaintiffs detailed in their briefs, BOP has been unable to provide consistent explanations of its account numbering

systems—a fundamental and basic aspect of any ESI search for banking records—as well as their banking systems, backup tapes, and other critical ESI issues.

Moreover, ascertaining the very basic fundamental information about BOP's account numbers is only a preliminary step. Ultimately, FRA needs to run the process of searching BOP's backups of its legacy and current core production systems. For example, Plaintiffs explained that because BOP revealed that many of the transactions from its legacy core banking system never made it to the "Ancillary Table" on BANKS, backups of that legacy core banking system need to be searched by FRA (BOP understandably lacks the capacity to do so). The Court noted that searching Tape 23 would be a good starting place. *See, e.g.*, Tr. at 12 ("At least from a proportionality point of view … it would make sense I think to start with something like tape 23.").

In sum, Plaintiffs have consistently maintained that this entire process and the expenses entailed in conducting a proper search of BOP's available ESI are a direct result of BOP's discovery misconduct. Therefore, Plaintiffs propose that the parties submit short supplemental letter briefs setting forth their respective positions prior to FRA commencing any further work on this matter.

**Defendant's Position**

For multiple reasons, BOP believes that any briefing of the cost-shifting issue at this time is premature. First, while FRA has provided an estimate of its fees for this project, FRA has not even begun its work. With regard to FRA's previous work in this case analyzing the data from Tape 6, FRA[s actual fees far exceeded the initial estimate for that work. Those fees also far exceeded FRA's $69,000 initial fee estimate for this work, despite the prior work being limited to analysis of one backup tape and the current scope of work involving multiple systems and data from multiple tapes. Accordingly, we believe it would be prudent to wait until FRA's work is further underway so that FRA, the parties, and the Court have a better understanding of what the actual costs are likely to be for this project.

Second, there is no basis for cost-shifting at this time. Cost-shifting is a function of, and must be proceeded by, the granting of a motion to compel, the failure to comply with a court order, or a finding that a party has otherwise failed to comply with its obligations as described in Federal Rule of Civil Procedure 37(a)-(d). Nothing remotely similar has occurred here. Rather, following the July 30, 2025 conference, this Court <u>terminated</u> both Plaintiffs' motion to compel and BOP's motion for protective order. (*See* 8/05/25 Minute Order).

The Court now has directed the parties to request that FRA confirm how account numbers and other identifying numbers (transaction reference numbers, customer profile numbers) are/were structured across BOP's various banking systems during the relevant time period, in order to ensure that search queries using these identifiers will reliably match the corresponding records. BOP has searched for, and produced, hundreds of transactional records for the customers at issue. For the reasons previously discussed in our briefing to the Court, and as will be further addressed when BOP renews its motion to dismiss, those transactions cannot support jurisdiction over BOP here. Nonetheless, BOP is confident that its production is materially accurate and complete. As the Court is aware, FRA's prior work on Tape 6 did not identify a single responsive transaction on Tape 6. (*See* FRA's November 3, 2023 Summary Memo, ECF No. 128-22, at 1 (confirming that

FRA identified no transactions on Tape 6 on or before August 19, 2003, containing any of the search terms used).

<u>At least</u> unless and until <u>after</u> FRA's additional work shows that the discovery BOP has provided to date is materially deficient—which BOP believes will not be the case—there is no basis for any cost-shifting whatsoever. And the parties and the Court will not know the results of FRA's work until that work is complete. Accordingly, it is BOP's position that any briefing on the issue of cost-shifting should not proceed until, at minimum, after FRA has completed its work and reported its findings to the parties.

Notwithstanding the above, if the Court wishes to proceed with briefing the cost-shifting issue now, it is BOP's position that simultaneous briefing is inappropriate, given that Plaintiffs have the burden to demonstrate sufficient grounds for any cost-shifting. As such, <u>if</u> the Court decides to proceed with briefing now, BOP requests that Plaintiffs be directed to file their five-page letter-brief first, and BOP be given two weeks to file a five-page response.

*****

Respectfully submitted,

<u>/s/ Michael Radine</u>

cc:   All counsel